# Illinois Official Reports

## Appellate Court

---

### *Crespo-Fregoso v. City of Chicago*, 2021 IL App (1st) 200972

---

| | |
|---|---|
| Appellate Court Caption | LILIAN CRESPO-FREGOSO, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, First Division<br>No. 1-20-0972 |
| Filed | August 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-L-0179; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David J. Kupets, of Law Offices of Kupets & DeCaro, P.C., of Chicago, for appellant.<br><br>Celia Meza, Acting Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Justin A. Houppert, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Hyman and Coghlan concurred in the judgment and opinion. |

¶ 1 Plaintiff, Lilian Crespo-Fregoso, fell in a pothole and injured herself while crossing a service drive next to her home. Plaintiff filed suit against the City of Chicago (City), alleging that the City's negligent failure to maintain the service drive proximately caused her physical and financial injury. The circuit court entered summary judgment in favor of the City on plaintiff's claim, holding that the City did not owe plaintiff a duty to maintain the service drive because plaintiff was not an intended and permitted user of the service drive at the time she was crossing. For the following reasons, we affirm the circuit court's judgment.

¶ 2                                              I. BACKGROUND

¶ 3 On January 7, 2018, plaintiff was traveling in her vehicle with her husband and daughter near 2158 North Central Avenue in Chicago. At that location, Central Avenue runs northbound and southbound. Adjacent to the southbound traffic lane is a one-block service drive. The service drive is to the west of southbound Central Avenue, with a grassy median between it and southbound Central Avenue. There is a sidewalk on the grassy median closest to southbound Central Avenue, between the service drive and Central Avenue. This sidewalk ends midblock. Vehicles park on the east and west sides of the service drive.

¶ 4 There are two homes on the west side of the service drive that face each other, in a north-south direction. There is no sidewalk along the west side of the service drive, but there is a small concrete pathway that leads perpendicularly from the curb to a gate in between the two homes.

¶ 5 At the south end of the service drive is a parking area with several perpendicular parking spaces. Plaintiff's husband parked their vehicle across the street from plaintiff's home in the northernmost perpendicular spot on the east side of the service drive. Plaintiff exited the vehicle and removed four bags of groceries from the back seat. Plaintiff walked onto the sidewalk on the east side of the service drive, down a curb cut that led into the service drive, and proceeded west. As she walked across the service drive, plaintiff fell into a pothole that was approximately two feet in diameter and three to five inches deep. Plaintiff testified she was aware of the pothole and attempted to walk around it, but she slipped on snow and ice on the street. Plaintiff's left leg fell into the pothole, causing her to hit her head on the ground.

¶ 6 Below is an image from exhibit 1 to plaintiff's deposition, on which plaintiff marked an X at the location where her car was parked and traced in black her path across the service drive from her parked car to the pothole. Plaintiff's home is marked by a red dot. North and southbound Central Avenue, the grassy median, and the sidewalk are shown at the top of the image.



¶ 7    On January 8, 2017, Plaintiff sought medical treatment for her injuries. Plaintiff was referred to an orthopedist, who diagnosed her with inflammation and tears to ligaments and cartilage in her left leg. Plaintiff also complained of lower back pain related to the incident. Plaintiff was treated with physical therapy and surgery to her left leg. However, she did not see improvement to her condition. Plaintiff continues to experience pain and limitation of activities such as walking and standing.

¶ 8    On April 11, 2019, plaintiff filed an amended complaint against the City of Chicago, alleging that its negligent failure to maintain the service drive resulted her injury. The City filed an answer and affirmative defenses, and the case proceeded to discovery.

¶ 9    On February 21, 2020, the City moved for summary judgment on plaintiff's one-count amended complaint pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2018)). Attached to the motion were the amended complaint, plaintiff's deposition, plaintiff's answers to interrogatories, and an excerpt of section 3B.18 from the Manual on Uniform Traffic Control Devices for Streets and Highways (Manual) (U.S. Dep't of Transp., Fed. Highway Admin., Manual on Uniform Traffic Control Devices for Streets and Highways (2009 ed. incorporating rev. 1 & 2 May 2012), https://mutcd.fhwa.dot.gov/pdfs/2009r1r2/ mutcd2009r1r2edition.pdf [https://perma.cc/26JB-9ZBT]), which was adopted pursuant to statute (625 ILCS 5/11-301 (West 2018)). The City argued that it was not liable for plaintiff's

injury because (1) plaintiff was not an intended and permitted user of the service drive, (2) the pothole was an open and obvious condition, and (3) plaintiff slipped on a natural accumulation of ice, not the pothole.

¶ 10 Plaintiff filed a response, attaching her deposition; the deposition of William Little, a public way inspector with the City of Chicago Department of Transportation; and the deposition of Joaquin Lazo, an asphalt helper for the City of Chicago. The City filed a reply.

¶ 11 On May 5, 2020, the circuit court granted the City's motion and entered summary judgment in favor of the City. In its written order, the circuit court stated that plaintiff was not an intended and permitted user of the service drive where she fell because plaintiff was not crossing at either an intersection or a marked crosswalk.

¶ 12 Plaintiff filed a motion to reconsider, arguing that the unique configuration of North Central Avenue near where plaintiff fell raised a question of fact as to whether she was an intended and permitted user of the service drive. The City filed a response. On August 26, 2020, the circuit court entered an order denying plaintiff's motion.

¶ 13 On September 14, 2020, plaintiff filed a timely notice of appeal.

¶ 14                                        II. ANALYSIS

¶ 15 On appeal, plaintiff argues that the circuit court erred in entering summary judgment in favor of the City because she was an intended and permitted user of the service drive where she fell.

¶ 16 "Summary judgment should not be granted unless the pleadings, depositions, and admissions on file, together with any affidavits, reveal that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law." *Cook v. Village of Oak Park*, 2019 IL App (1st) 190010, ¶ 14 (citing 735 ILCS 5/2-1005(c) (West 2016)). We review the circuit court's ruling on summary judgment *de novo*. *Id.*

¶ 17 "In order to maintain a cause of action for negligence, plaintiff must establish that the City owed a duty of ordinary care, breached that duty, and an injury was proximately caused by that breach." *Gutstein v. City of Evanston*, 402 Ill. App. 3d 610, 616 (2010). "Whether the City owed plaintiff a duty of care is a question of law for the court to decide." *Id.*

¶ 18                A. Plaintiff Was Not an Intended and Permitted User of the Street

¶ 19 The Local Governmental and Governmental Employees Tort Immunity Act provides that
> "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a) (West 2018).

Thus, the first inquiry into whether the City owes a duty to plaintiff is whether plaintiff was an "intended and permitted" user of the service drive. *Princivalli v. City of Chicago*, 202 Ill. App. 3d 525, 528 (1990). The act is in derogation of the common law, so it must be strictly construed against the City. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995).

¶ 20 Plaintiff argues that she was an intended and permitted user of the service drive at the time she was injured because she crossed in an unmarked but intended crosswalk.

¶ 21    Generally, "since pedestrians are not intended users of streets, a municipality does not owe a duty of reasonable care to pedestrians who attempt to cross a street outside the crosswalks." *Id.* The rationale behind this rule is that the street is for use by vehicles, not pedestrians, "except under certain limited circumstances, *i.e.*, 'where defendant has provided crosswalks or the like.' " *Curatola v. Village of Niles*, 154 Ill. 2d 201, 210 (1993) (quoting *Risner v. City of Chicago*, 150 Ill. App. 3d 827, 831 (1986)). The Illinois Vehicle Code defines a crosswalk as

> "(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway, and in the absence of a sidewalk on one side of the highway, that part of the highway included within the extension of the lateral line of the existing sidewalk to the side of the highway without the sidewalk, with such extension forming a right angle to the centerline of the highway;

> (b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface placed in accordance with the provisions in the Manual adopted by the Department of Transportation as authorized in Section 11-301." 625 ILCS 5/1-113 (West 2018).

¶ 22    The Manual, adopted pursuant to section 11-301 of the Illinois Vehicle Code (625 ILCS 5/11-301 (West 2018)), provides the manner in which a crosswalk may be marked for pedestrian use. U.S. Dep't of Transp., *supra* § 3B.18. The Manual provides that crosswalk markings establish a crosswalk at all nonintersection locations. *Id.* The Manual further provides that warning signs should be installed for all marked crosswalks at nonintersection locations because pedestrian crossings at these locations are "generally unexpected by the road user." (Emphasis omitted.) *Id.*

¶ 23    Plaintiff argues that crosswalks may be intended even where they are not designated or improved in any particular way. While this may be true for crosswalks at intersections, we find that the plain text of section 1-113(b) of the Illinois Vehicle Code (625 ILCS 5/1-113(b) (West 2018)) requires crosswalks at nonintersection locations to be distinctly designated by the appropriate pavement markings set forth in the Manual. The Manual similarly provides that, for the safety of pedestrians and vehicular traffic, crosswalk markings and warning signs should be used to establish crosswalks at nonintersection locations.

¶ 24    Plaintiff concedes, and the exhibits in the record show, that there are no signs or pavement markings indicating a crosswalk where she fell. It is also undisputed that plaintiff crossed the service drive midblock, not at an intersection. A midblock location does not become a crosswalk because it is used as a crosswalk; it becomes a crosswalk because it is so designated and appropriate signs placed. See *Deren v. City of Carbondale*, 13 Ill. App. 3d 473, 477 (1973) (citing *Locigno v. City of Chicago*, 32 Ill. App. 2d 412, 420-21 (1961)). We therefore find that plaintiff was not in a crosswalk when she fell.

¶ 25    Plaintiff argues that the curb cut in the east sidewalk is evidence that the City intended to create a crosswalk at that location. We disagree.

¶ 26    A municipality's intent "must be inferred from the circumstances. We need look no further than the property itself to determine the municipality's manifestations of intent with regard to use of the property by pedestrians." *Sisk v. Williamson County*, 167 Ill. 2d 343, 351 (1995). "Where there are no affirmative physical manifestations of a municipality's intent, necessity cannot apply the duty of ordinary care for a sidewalk to a roadway." *Gutstein*, 402 Ill. App. 3d

at 618. "Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use." *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426 (1992).

¶ 27    We find that the curb cut in the sidewalk on the east side of the service drive where the sidewalk terminates is not an affirmative physical manifestation of the City's intent to create a crosswalk. Neither Illinois law nor the Manual provides that a curb cut in a sidewalk on one side of a street may be used to designate a crosswalk at a nonintersection location. Similarly, neither Illinois law nor the Manual provides that a pathway leading perpendicular to the street opposite a curb cut creates a crosswalk at a nonintersection location. The Manual simply states that a curb cut is used to "mark boundaries between pedestrian and vehicular ways where there is no raised curb." U.S. Dep't of Transp., *supra* § 3B.18. If the City intended to create a nonintersection crosswalk at that location, it would have manifested that intent with the appropriate pavement markings as required by law. Because there are no crosswalk markings running east and west, the most logical rationale for the configuration of the sidewalk on the east side of the service drive is that the City intended that the end of the sidewalk be marked for pedestrians going to or from their parked vehicles on the service road or in the adjacent perpendicular parking spaces at the southeast end of the service drive.

¶ 28    Plaintiff argues that, if the area she was walking in was not a crosswalk, there would be no way for her to safely access her home because there is no sidewalk on the west side of the service drive. We disagree. As a pedestrian, plaintiff was a permitted, not intended, user of the service drive where she fell. See *Wojdyla*, 148 Ill. 2d at 426 (holding "[t]hat pedestrians may be permitted to cross the street mid-block does not mean they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose"). "The fact that it may have been impossible for the pedestrian to walk on a sidewalk or in a crosswalk is not dispositive" of whether plaintiff is an intended user of the street. *Sisk*, 167 Ill. 2d at 349. It is the intent of the municipality that controls the imposition of a duty, and "[w]hether a use is intended by a local government entity is not determined solely on the necessity of such use." *Vaughn*, 166 Ill. 2d at 162-63. That the City did not intend pedestrians to cross the service drive at that location does not prohibit plaintiff from doing so; it simply means the City did not have a duty to maintain the middle of the service drive in a reasonably safe condition for pedestrians.

¶ 29    A similar argument was considered and rejected by this court in *Gabriel v. City of Edwardsville*, 237 Ill. App. 3d 649, 653 (1992). In *Gabriel*, we found that a plaintiff who "walked into the street about five to six steps and tripped over a water main cover" could not recover against the City for her injuries. *Id.* The plaintiff had argued that the City owed her a duty to maintain the street because the sidewalk ended on the side of the street she was walking on and so she was required to cross the street outside of a crosswalk in order to reach her destination. *Id.* at 650. We found the plaintiff was not an intended user of the street "because the streets are designated for use by vehicular traffic—not pedestrians." *Id.* at 652. The plaintiff's claimed necessity was not sufficient to establish a burden on the municipality to maintain the streets in a safe condition for pedestrians. "Even when a street is continuously used by pedestrians, we find no Illinois authority which permits the conversion of the street into a sidewalk." *Id.*

¶ 30    Plaintiff claims that *Thorsen v. City of Chicago*, 74 Ill. App. 3d 98 (1979), holds that cities owe a duty to pedestrians to provide a safe place to walk. We disagree. *Thorsen* held that *once*

*a sidewalk is installed*, cities are required to either maintain that sidewalk, close the street to pedestrian traffic, or provide a safe place to walk. *Id.* at 107. It is well established that "a municipality is not required to provide improvements such as lights or crosswalks." *Wojdyla*, 148 Ill. 2d at 426. Here, there is no evidence that the City ever provided a sidewalk on the west side of the service drive or a crosswalk where plaintiff fell. Therefore, *Thorsen* does not apply.

¶ 31        Plaintiff next argues that, if the area where she crossed the street was not a crosswalk, she was nonetheless an intended and permitted user of the service drive under a narrow exception provided for pedestrians accessing their parked vehicles. Plaintiff cites *Di Domenico v. Village of Romeoville*, 171 Ill. App. 3d 293 (1988), for the proposition that pedestrians are intended users of the street in the area around their parked vehicles.

¶ 32        In *Di Domenico*, the plaintiff had lawfully parked his car parallel to the curb on a municipal street. *Id.* at 294. The plaintiff went to access the trunk of his car and, in so doing, stepped into the street and fell into a hole. *Id.* The hole was located "a few feet" behind the trunk of his vehicle. *Id.* The plaintiff sued, arguing that "the defendant Village had the duty to protect pedestrians from injury when walking on the roadways to their lawfully parked vehicles and that the defendant had violated that duty." *Id.* The trial court dismissed the plaintiff's claim, and the appellate court reversed, holding that because the village intended people to park their vehicles on the street, it also intended those people to "use the street area around the parked vehicle for ingress and egress to and from their vehicle." *Id.* at 295-96.

¶ 33        We find *Di Domenico* is inapposite. The plaintiff in *Di Domenico* was "a few feet" behind his vehicle at the time he fell and was injured. *Id.* at 294. In addition, at the time he fell, the plaintiff was using "the street as a passageway in order to get from his vehicle to the sidewalk." *Id.* at 296. Here, by contrast, plaintiff had already exited her vehicle and walked from the service drive onto the adjacent east sidewalk and then back west onto the service drive where she fell. At the time she was injured, she was in the traffic lane nearing the opposite, west side of the service drive from her parked vehicle, using the service drive as a crosswalk.

¶ 34        The facts in this case are similar to the circumstances considered by our supreme court in *Wojdyla*, 148 Ill. 2d 417, where the decedent was struck by a vehicle while crossing a six-lane highway outside of a crosswalk in order to access his legally parked vehicle on the other side of the highway. The plaintiff argued that "the decedent was an intended user of the highway because his car was parked in the street, and gaining access to his car required travel on the street itself." *Id.* at 424. Our supreme court disagreed and distinguished *Di Domenico* because the decedent "was not in the area directly around his car, but the middle of the highway." *Id.* Our supreme court held that the

> "use of parking lanes mandates that individuals have access to the street for the ingress to and egress from the car. Those lanes designated for the use of moving vehicles, however, are not designed for use by pedestrians but for automobiles, and so no duty attaches when pedestrians cross these traffic lanes outside of crosswalks." *Id.* at 425.

¶ 35        In this case, the testimony and exhibits in the record demonstrate that the pothole where plaintiff fell was located in the traffic lane of the service drive. At the time she was injured, plaintiff was not in the area directly around her car but in the middle of the service drive. As previously discussed, plaintiff was not in a crosswalk at the time she was injured. Plaintiff, a pedestrian, was not an intended user of the part of the service drive outside of a designated crosswalk and outside of the parking lanes. This is true even though the sidewalk on the east side of the service drive ended next to plaintiff's vehicle and there was no sidewalk available

for plaintiff to use on the west side of the service drive. We find that, because plaintiff was not an intended and permitted user of the service drive where she fell, the City did not owe her a duty to maintain that location in a reasonably safe condition for pedestrian use.

¶ 36 Plaintiff also argues that there is a question of fact as to whether the south end of the service drive was a parking lot and, thus, whether the City owed plaintiff a duty to maintain the service drive in a safe condition in the absence of crosswalk markings. Because plaintiff failed to present this argument in her response to the motion for summary judgment and instead raised this argument for the first time in her motion to reconsider, we find that this argument was forfeited. "[A]rguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003, ¶ 37. Even if this argument were not forfeited, we find that this argument fails. As discussed, plaintiff's testimony and the exhibits in the record show that plaintiff fell in the middle of the traffic lane of the service drive, not in the area directly around her vehicle or in the area of the perpendicular parking spaces at the south end of the of the service drive. Because the undisputed evidence is that plaintiff fell in the traffic lane, we find there is no question of fact as to whether the area where plaintiff fell was a parking lot that should have been maintained for pedestrian use.

¶ 37                                    B. The Pothole Was Open and Obvious

¶ 38 Even if the plaintiff was an intended and permitted user of the service drive where she fell, we find that the City did not owe her a duty because the pothole was an open and obvious condition. Although the circuit court did not rule on this basis, based upon *de novo* review, we may affirm the circuit court's entry of summary judgment in favor of the City "on any basis the record permits, even if not the ground on which the court based its ruling." *Sandstrom v. De Silva*, 268 Ill. App. 3d 932, 935 (1994).

¶ 39 "In Illinois, the open and obvious doctrine is an exception to the general duty of care owed by a landowner." *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12. Generally, one who "own[s], occup[ies], or control[s] and maintain[s] land [is] not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447-48 (1996). "The open and obvious nature of the condition itself gives caution," so "the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition." *Id.* at 448.

¶ 40 "The existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 19. To determine whether a duty exists, we consider

> " 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.' [Citation.] Four factors guide our duty analysis: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 14.

"Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.* ¶ 19.

¶ 41 "Obviousness requires that a reasonable person in the visitor's position, exercising ordinary intelligence, perception, and judgment, would recognize both the condition and the risk." *Atchley v. University of Chicago Medical Center*, 2016 IL App (1st) 152481, ¶ 34. "[W]here no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Bruns*, 2014 IL 116998, ¶ 18.

¶ 42 Here, we find there is no dispute as to the obvious physical nature of the pothole. Plaintiff testified that the pothole was two to three feet long and three to five inches deep. Plaintiff testified that she had seen the pothole on previous occasions and walked around it. She also testified that at the time she fell it was late afternoon and lightly snowing. Plaintiff testified that she saw the pothole on the day she fell and she saw that there was ice on it. Although plaintiff tried to walk around the pothole, she fell in it. The photographs of the pothole in the record demonstrate that a reasonable person would perceive the risk of the pothole due to its size and visibility from the street. Because the pothole was large and visible and because a reasonable person taking ordinary care would, as plaintiff did, recognize the risk of the pothole, we find that the pothole was an open and obvious condition.

¶ 43 Plaintiff then argues that a duty should be imposed on the City because the deliberate encounter exception to the open and obvious rule applies. "The deliberate encounter exception arises when the landowner has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." (Internal quotation marks omitted.) *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 38. The deliberate encounter exception is applied most commonly, though not exclusively, in situations where "workers are compelled to encounter dangerous conditions as part of their employment obligations." *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 725-26 (2010). "Whereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury." *Bruns*, 2014 IL 116998, ¶ 20.

¶ 44 This court considered whether to apply the deliberate encounter exception outside the workplace context in *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669. In *Winters*, the plaintiff injured himself on his way to do his laundry after falling on a snow pile that was on the path to the laundry facility. *Id.* ¶ 18. Although the plaintiff acknowledged that there were alternative routes available to the laundry facility (*id.* ¶¶ 19-20), the path over the snow pile was the shortest route. *Id.* ¶ 76. This court found that the snow pile was open and obvious and refused to apply the deliberate encounter exception because the plaintiff "failed to demonstrate that a reasonable person in his position would have found greater utility in choosing to walk over the snow pile instead of using one of the alternative paths." *Id.* ¶ 75.

¶ 45 Likewise, we find that the deliberate encounter exception to the open and obvious rule does not apply in this case. As in *Winters*, plaintiff here was not under economic compulsion to complete a personal errand and return to her home. Plaintiff testified that she was aware of other paths to reach her home that did not involve crossing an icy pothole, but she crossed at that location because it was more convenient or direct. The deliberate encounter exception does not apply where there is only a minor inconvenience to plaintiff in taking an alternative path and economic compulsion is not an issue. *Id.* ¶ 76.

¶ 46    In applying the four factors in a duty analysis to the facts of this case, we find that the factors weigh against the imposition of a duty on the City. Because the pothole was open and obvious, we find that the City was not required to foresee and guard against any danger to plaintiff posed by the condition. Further, we find that the magnitude of the burden of guarding against plaintiff's injury and the consequences of placing that burden on the City would be immense. "The costs of making all public streets and roadways reasonably safe for unrestricted pedestrian use would be an extreme burden on municipalities with limited resources." *Vaughn*, 166 Ill. 2d at 164. Because the four factors in our duty analysis weigh against the imposition of a burden on the City in this case, we find that the City did not owe plaintiff a duty.

¶ 47                                  III. CONCLUSION
¶ 48    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 49    Affirmed.