2024 IL App (1st) 231396

SIXTH DIVISION
June 14, 2024

No. 1-23-1396

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MARLA DAVIS, | ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2020 L 063072 |
| ADVOCATE HEALTH AND HOSPITALS CORPORATION, | ) ) ) | The Honorable Martin S. Agran, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1 The plaintiff was injured as she entered a hospital parking lot on her motorcycle when a descending parking lot gate struck her uncovered head. We agree with the circuit court that the hospital did not owe the plaintiff a duty of care because the condition of the parking lot gate was open and obvious. Therefore, we affirm.

¶ 2                      I. BACKGROUND

¶ 3 Marla Davis was injured when she was struck on the head by an electronic parking lot gate arm in Park Ridge, Illinois, in the Yacktman Pavilion parking lot owned and operated by Advocate

Health and Hospitals Corporation (Advocate). There are eight visitor parking lots on Advocate's Lutheran General Hospital Park Ridge (Lutheran General) campus. While motorcycles are not permitted to park in any of the gated parking lots, they are permitted to park in the north open lot, which is located across the street from Advocate's campus.

¶ 4 To enter Advocate's Yacktman Pavilion parking lot, vehicles are required to pass through an electronic gate. A warning sign posted on the mechanism box of the gate states, "WARNING. Moving Gate Can Cause Serious Injury or Death" and "This Gate is for Vehicles Only. Pedestrians must use Separate Entrance." There are also several pictures on the mechanism box. One shows an electronic gate arm appearing to hit a pedestrian on the head. Another shows a circle with a red line going through it and what appears to be an individual on a motorcycle. The gate itself also contains several warning signs. One says, "moving arm can cause bodily harm or vehicle damage" and a second says, "cars only: no bicycles, motorcycles or pedestrians." The gate also contains a picture of an electronic gate arm appearing to hit a pedestrian on the head.

¶ 5 On July 13, 2018, Davis drove her 14-year-old daughter to a doctor's appointment on her motorcycle. It was a bright, sunny day. The doctor's office was located in the Yacktman Pediatrics building on Lutheran General's campus. Davis had taken her daughter to Yacktman Pediatrics for many years, and she had parked in the Yacktman Pavilion parking lot at least 10 times before. She had always driven her car into the parking lot prior to July 2018.

¶ 6 This time, however, Davis dropped her daughter off at her appointment, and then went to the Yacktman Pavilion parking lot on her motorcycle shortly after 4 p.m. Davis was not wearing a helmet. In the past, when Davis had taken her daughter to doctor's appointments, she had stopped at the entrance of the Yacktman Pavilion lot to speak with an attendant several times. On those occasions, the parking lot gate arm was down and needed to be raised by the attendant before Davis

could enter. This time, however, no attendant was present. Davis admitted that she was able to see clearly as she drove into the parking lot and that nothing was impairing her line of sight. She slowed down to approximately three or four miles per hour before entering the lot, but because the parking lot gate arm was up, she did not stop or read the warning signs posted on either the parking lot gate or the mechanism box of the gate before entering. As Davis proceeded into the parking lot, the gate descended and hit her on the top of her head.

¶ 7       Davis did not immediately seek medical attention. Instead, she picked up her daughter from her doctor's appointment, went to Portillo's restaurant, then called Lutheran General's maintenance department to report that the parking lot gate had hit her on the head. Davis could not remember the name of the man she spoke to from the maintenance department but claimed he told her, "That's happened before. I cannot believe they haven't fixed that." She then drove her daughter home, which took about 25 minutes. Several hours later, Davis returned to Lutheran General's emergency room because she "didn't feel right." She had a computerized tomography (CT) scan, the results of which were normal and was told she had a concussion.

¶ 8       Bartosz Gronkiewicz, who had worked as a public safety officer for Lutheran General for more than 10 years, spoke with Davis after she visited Lutheran General's emergency room. He examined the parking lot gate arm after talking to Davis but found nothing wrong with it. He then prepared an incident report, which summarized Davis's version of events. Gronkiewicz stated in his deposition that if he had detected any malfunctioning of the gate, he would have noted it in his incident report. Gronkiewicz had never heard of anyone having an incident with the Yacktman Pavilion parking lot gate before or received any complaints about the gate not functioning correctly, but he admitted he did not necessarily receive notice of every single incident that occurred at the hospital.

¶ 9     Another Lutheran General public safety officer, Derek Synowiec, said he was similarly unaware of any previous incidents where someone had been hit on the head by a parking lot gate arm. Phillip Schatzel, who had been the manager of public safety at Lutheran General for more than 20 years, could not recall a single instance of another person being hit by a parking lot gate while driving a motorcycle into the Yacktman Pavilion parking lot either. He said that no changes had been made to the electronic gate arm after this particular incident, and that if there had been any issues with the functioning of the gate, the facilities department would have cordoned off the gate and fixed it immediately.

¶ 10     On September 3, 2020, Davis filed a complaint against Advocate, alleging that she was injured by Advocate's parking lot gate due to its negligence. Advocate moved for summary judgment, and on July 7, 2023, the circuit court granted Advocate's motion "for the reasons stated on the record." Davis timely appealed.

¶ 11                                II. ANALYSIS

¶ 12     As an initial matter, Advocate argues that Davis's brief does not comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) because its statement of facts contains improper argument, misrepresents facts, and fails to include facts "necessary to an understanding of the case." Rule 341(h)(6) requires a statement of facts to be presented "accurately and fairly without argument or comment." *Id.* We will disregard any arguments and unsupported statements. *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶ 3.

¶ 13                            A. Standard of Review

¶ 14     We review a trial court's grant of summary judgment *de novo. Givens v. City of Chicago*, 2023 IL 127837, ¶ 46. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

4

any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). We must "construe the record strictly against the movant and liberally in favor of the nonmovant." *Givens*, 2023 IL 127837, ¶ 46. "[T]o survive a motion for summary judgment, a plaintiff need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12.

¶ 15    Advocate contends that we should affirm the circuit court's grant of summary judgment without reaching the merits of Davis's appeal because she failed to provide a transcript of the hearing where the circuit court articulated its reasons for granting Advocate's motion for summary judgment. But because we review the circuit court's decision to grant summary judgment *de novo* and give no deference to its findings, the missing hearing transcript does not affect our ability to reach the merits of Davis's appeal.

¶ 16              B. The Circuit Court Properly Granted Summary Judgment to Advocate

¶ 17    Davis contends that the circuit court erred when it granted summary judgment to Advocate, because Advocate was negligent in failing to exercise reasonable care to maintain its premises in a reasonably safe condition for use by invitees, including inspecting and repairing dangerous conditions and giving adequate warnings to prevent injury. To prove negligence, a plaintiff must plead and prove "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Id.* The existence of a duty is a question of law to be determined by the court. *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (1990). Because there can be no negligence without the existence of a duty, we must first determine whether Advocate owed a duty to Davis. See *Libolt v. Wiener Circle, Inc.*, 2016 IL App (1st) 150118, ¶ 26 ("duty is an essential element of a negligence claim; unless the plaintiff can demonstrate that a duty is owed ***, there can be no negligence imposed upon the defendant").

5

¶ 18          i. Advocate Owed No Duty to Davis Because the Parking Lot Gate Was

an Open and Obvious Condition

¶ 19     Generally, an operator of a business owes his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition. *Ward*, 136 Ill. 2d at 141. An exception to this general duty of care is the "open and obvious" doctrine, which states that " 'persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious.' " *Henderson v. Lofts at Lake Arlington Towne Condominium Ass'n*, 2018 IL App (1st) 162744, ¶ 40 (quoting *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447-48 (1996)); *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12. Our supreme court has "adopted the meaning of 'obvious' as defined in section 343A of the Restatement (Second) of Torts, meaning that 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 17 (quoting Restatement (Second) of Torts § 343A cmt. b (1965)); see *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 201-02 (2000) ("For a condition to be open and obvious, an invitee must reasonably be expected to discover it and protect himself against it.").

¶ 20     If a dangerous condition is open and obvious, this is not an "automatic bar to finding a legal duty on the part of the landowner." (Internal quotation marks omitted.) *Henderson*, 2018 IL App (1st) 162744, ¶ 41. A landowner may still owe a duty to an invitee if the landowner "should anticipate the harm despite such knowledge or obviousness." (Emphasis and internal quotation marks omitted.) *Ward*, 136 Ill. 2d at 149. Nevertheless, "[w]here the condition is open and obvious,

the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns*, 2014 IL 116998, ¶ 19.

¶ 21 Davis contends that "questions of fact surround the issue of whether the condition was open and obvious." She relies on *Buchaklian*, 314 Ill. App. 3d 195, and *Simmons v. American Drug Stores, Inc.*, 329 Ill. App. 3d 38 (2002), for support. Both cases are distinguishable. In *Buchaklian*, the plaintiff filed a negligence suit against the YMCA after she tripped and fell while walking across a mat. 314 Ill. App. 3d at 198. The plaintiff testified that one particular piece of the mat was sticking up approximately an inch or two higher than the other portions of the mat and that she had never seen the mat in that condition before. *Id.* The court concluded that "a question of fact exist[ed] as to whether the danger was open and obvious" because the plaintiff "did not observe the defect until after her fall and had never seen it on any previous occasion," the plaintiff's friend had never seen the defect before and did not see it until it was pointed out to her, and another patron and her daughter had previously tripped on the same mat. *Id.* at 202. The court stated that

> "[t]he evidence in the record can support a reasonable inference that the defect in the mat was difficult to discover because of its size, the lack of significant color contrast between the defect and the surrounding mat, or merely the short time that a person has in which to discover the defect as he or she takes a few steps toward the mat." *Id.*

Therefore, it concluded that "the condition of the mat was not 'so blatantly obvious and in such [a] position' that the YMCA could not reasonably be expected to anticipate that invitees would fail to protect themselves from any danger posed by the condition of the mat." *Id.* (quoting *Ward*, 136 Ill. 2d at 148).

¶ 22 In *Simmons*, the plaintiff sued a drug store after he fell while attempting to pass through a "cartnapper" barrier when exiting the store. 329 Ill. App. 3d at 40. The drug store moved for

summary judgment, arguing that it owed no duty to the plaintiff because the barriers presented an open and obvious danger. *Id.* After the trial court granted summary judgment to the drug store, the plaintiff appealed, arguing that the danger posed by the barrier was not open and obvious. *Id.* The plaintiff's expert testified that the gap between the barriers was " 'far less than any minimum allowable egress width allowed by the City of Chicago Building Code' " and that the barriers " 'constitute[d] a dangerous obstruction.' " *Id.* at 41-42. The court reversed, finding a genuine issue of material fact existed as to whether a reasonable person in the plaintiff's position would have failed to appreciate the risk posed by the narrow barrier. *Id.* at 43-44.

¶ 23     Unlike *Buchaklian* and *Simmons*, the danger posed by the electronic gate arm here was clearly open and obvious and a reasonable person in Davis's position would have appreciated the risk it posed. Davis testified that she had been to the Yacktman Pavilion parking lot at least ten times before, that the gate arm had been down on a number of those occasions, and that the parking lot attendant had to raise the gate before she could enter. Warning signs posted on both the gate arm and the mechanism box of the gate warned invitees, with both words and pictures, of the dangers posed by the gate. These warnings expressly stated that motorcycles were not permitted in the parking lot and cautioned that the "moving gate can cause serious injury or death." Because the danger posed by the gate was readily observable and because a reasonable person in Davis's position would have appreciated the risk it posed, we find that the danger posed by the parking lot gate arm was open and obvious.

¶ 24     Courts around the country have found that a parking lot gate arm constitutes an open and obvious danger. See, *e.g.*, *Johnson v. Acumen Capital Partners, LLC*, 184 N.Y.S.3d 354, 356 (App. Div. 2023) (when a pedestrian sued the owners of a parking lot after he was struck by a security gate barrier arm that hit him as he walked underneath it, the court granted summary judgment to

the owners of the parking lot, finding that the barrier arm was "an open and obvious condition"); *Calderon v. Nyack Hospital*, 742 N.Y.S.2d 65, 66 (App. Div. 2002) (when a pedestrian sued a hospital, claiming he was injured when he was struck by parking lot gate at the hospital, the court found that summary judgment was properly granted to the hospital because the gate was "readily observable"); *Kirksey v. Summit County Parking Deck*, No. Civ. A. 22755, 2005 WL 3481536, at *3-4 (Ohio Ct. App. Dec. 21, 2005) (concluding that summary judgment was properly granted to the owners of a parking garage after the plaintiff was struck by parking lot gate as she walked out of the parking garage, finding that the gate "constitute[d] an open and obvious hazard" because it was "certainly observable" and "an ordinary person could have observed the gate if he or she had looked"); *Waddell v. Trizec Hahn Office Properties*, No. 221374, 2001 WL 690897, at * 2 (Mich. Ct. App. June 19, 2001) (*per curiam*) (finding that the trial court properly granted summary judgment to the defendant after the plaintiff was hit in the head with a parking lot gate because the gate was bright yellow; a sign "clearly cautioned that the lane was intended for vehicles only, and not for pedestrians"; the "risk of harm posed by the gate arm represented a danger that an average person of ordinary intelligence should have been able to appreciate upon casual inspection"; and "the danger, as presented, [wa]s open and obvious" (internal quotation marks omitted)); *Matthews v. Cole*, No. 05-4975, 2007 WL 2219302, at * 2 (Mass. Super. Ct. May 24, 2007) ("Given the ubiquitous nature of parking garages, traffic control gates such as the one involved in the present case are common objects in today's society. An ordinarily intelligent person knows how such a gate functions and is aware of its range of movement.").

¶ 25          ii. The Deliberate Encounter Exception Does Not Apply

¶ 26   Davis alternatively argues that if the condition was open and obvious, then the deliberate encounter exception applies. The deliberate encounter exception to the open and obvious rule

applies " 'where the possessor [of land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.' " *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002) (quoting Restatement (Second) of Torts § 343A cmt. f (1965)). This exception "is applied most commonly, though not exclusively, in situations where 'workers are compelled to encounter dangerous conditions as part of their employment obligations.' " *Crespo-Fregoso v. City of Chicago*, 2021 IL App (1st) 200972, ¶ 43 (quoting *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 725-26 (2010)). Conversely, it does not apply where "there is only a minor inconvenience to plaintiff in taking an alternative path and economic compulsion is not an issue." *Id.* ¶ 45.

¶ 27    Davis asserts that "it was reasonably foreseeable to [Advocate] that [she] would deliberately encounter the Yacktman lot gate as she parked for the appointment in the Yacktman building." For support, she relies on *Morrissey*, where the plaintiff brought suit against a racetrack after the horse he was riding slipped and fell on soapy water that had accumulated near the east exit to the training track. 404 Ill. App. 3d at 712-13. The plaintiff conceded that the hazardous condition was open and obvious but argued that the deliberate encounter exception applied. *Id.* at 713. Based on the facts in the record, the court found it

> "impossible to conclude, as a matter of law, that the defendant, which was clearly aware that on a daily basis riders used the east exit because of its proximity to the training track, *** could not have anticipated that the plaintiff would elect *** the east exit, despite the dangerous condition there." *Id.* at 729.

Therefore, it concluded that the circuit court's decision to grant summary judgment "on the basis of the inapplicability of the deliberate encounter exception was improper." *Id.* at 730.

¶ 28    Here, by contrast, nothing in the record indicates that Advocate could have reasonably foreseen that Davis would be injured by the parking lot gate while riding her motorcycle into the Yacktman Pavilion lot. Warning signs on the parking lot gate and its mechanism box, which were located at the entrance to the parking lot, expressly prohibited motorcycles from parking in the Yacktman Pavilion lot. Although Davis contends that the gate was "up and out of her line of sight," she admitted during her deposition that on several of her prior visits to the lot, she had stopped at the entrance when the gate had been down, providing her with an adequate opportunity to view these warnings. In addition, three Lutheran General public safety officers—including Schatzel, who had worked at Lutheran General for more than 20 years—could not recall a single instance of another person being hit by a parking lot gate. Although Davis said that when she told a Lutheran General maintenance worker that the gate hit her, the maintenance worker responded, "That's happened before. I cannot believe they haven't fixed that," she could not recall his name and submitted no evidence of any prior incidents. Based on the facts in the record, we find, as a matter of law, that Advocate "could not have anticipated" that Davis would attempt to enter the Yacktman Pavilion parking lot on her motorcycle. See *id.* at 729. Davis was not required to park in Yacktman Pavilion lot in order to take her daughter to Yacktman Pediatrics, and it would have posed only a "minor inconvenience" for her to park in Lutheran General's north open lot, which allowed motorcycles and was located right across the street from Lutheran General's campus. See *Crespo-Fregoso*, 2021 IL App (1st) 200972, ¶ 45. Accordingly, we conclude that the deliberate encounter exception does not apply here.

¶ 29    Even though we conclude that the parking lot gate condition was an open and obvious one, we must still determine if Advocate owed a duty to Davis. To do so, we consider (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of

guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Bruns*, 2014 IL 116998, ¶ 34. "The first factor carries little weight because a defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious." *Id.* ¶ 35. The second factor "also carries little weight because 'it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks,' making the likelihood of injury slight." *Id.* (quoting *Sollami*, 201 Ill. 2d at 17). As to the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant, Davis argues that Advocate should have had "proper signage that was actually visible" and signs indicating that parking was only safe for motorcyclists in its ungated north open lot. But Advocate did place warnings signs on both the Yacktman Pavilion parking lot gate arm itself and on the gate's stationary mechanism box, which was located at the entrance to the lot. These signs expressly prohibited motorcyclists from parking in the gated lot and indicated that the "moving gate c[ould] cause serious injury or death." These signs were sufficient to put a reasonable motorcyclist on notice that they needed to park elsewhere. Although Davis argues that Advocate should have been required to staff the parking lot with an attendant as well, she cites no ordinance or rule articulating such a requirement, and we find that requiring Advocate to staff all seven of its gated parking lots 24 hours a day would impose too high a burden, especially when the warning signs posted suffice to alert a reasonable person to the gate's potential danger. For the reasons stated above, we conclude that Advocate had no duty to protect Davis from the open and obvious danger of a moving parking lot gate arm.

¶ 30                                   III. CONCLUSION

¶ 31    For the reasons above, the judgment of the circuit court is affirmed.

¶ 32    Affirmed.

*Davis v. Advocate Health & Hospitals Corp.*, 2024 IL App (1st) 231396

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-L-063072; the Hon. Martin S. Agran, Judge, presiding. |
| **Attorneys for Appellant:** | Kenneth C. Apicella, of Drost, Gilbert, Andrew & Apicella, LLC, of Palatine, for appellant. |
| **Attorneys for Appellee:** | Julie A. Teuscher, of Cassiday Schade LLP, of Chicago, for appellee. |