2022 IL App (1st) 210342-U

FIFTH DIVISION
March 25, 2022

No. 1-21-0342

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| EDEN OLENA, | ) Appeal from the Circuit Court of |
| | ) Cook County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 20 L 2072 |
| | ) |
| CITY OF CHICAGO, | ) Honorable |
| | ) Brendan A. O'Brien, |
| Defendant-Appellee. | ) Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court properly dismissed plaintiff's complaint alleging personal injury and property damage stemming from a bicycle accident, upon finding the defendant city owed plaintiff no duty of care under the Illinois Tort Immunity Act. Affirmed.

¶ 2                                    BACKGROUND

¶ 3    On April 6, 2019, plaintiff Eden Olena was riding her bicycle on the roadway near 1600 North Marcey Street in Chicago when she hit a pothole, causing her to fall and sustain injuries. She filed a complaint against defendant City of Chicago (City), alleging that the City failed to provide and maintain a safe and proper roadway for her to travel, and that its acts and omissions

in permitting a defect to form and remain on that roadway caused her to sustain injury. She also alleged that the City had knowledge of the pothole prior to her accident and failed to repair the roadway.

¶ 4    The City moved to dismiss Olena's complaint under section 2-619(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2018)), arguing that she was not an intended and permitted user of the City's roadway at the location where the accident occurred. Thus, the City claimed that it owed her no duty to maintain the property under section 3-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102 (West 2018)). The City attached the certification of David Smith, a City Department of Transportation projects administrator to its motion. Smith's certification included a copy of the City's 2019 Chicago bicycling map, which designates the locations of bicycle lanes throughout Chicago. Smith certified that on the date of the accident, "the roadway at 1600 N. Marc[e]y Street was *not* a bicycle route or other bikeway." (Emphasis in original.) He also stated that "there were no bicycle roadway markings or bicycle signs at or near 1600 N. Marc[e]y Street, designating that section of Marc[e]y Street as one that the City intended to be used by bicyclists." Finally, Smith stated that although there is no bicycle lane at 1600 North Marcey Street, "one block North on Clybourn[ ] Avenue there is a bicycle lane designated by signs and roadway markings for bicyclists who want to ride northbound and southbound."

¶ 5    In her response to the City's motion to dismiss, Olena argued that she was an intended user of the roadway at issue as expressed in the City's municipal code and direct statements from the mayor's office and the Department of Transportation. She also contended that bicyclists must use unmarked roads to get to and from marked bicycle lanes within Chicago.

¶ 6 On March 4, 2021, the circuit court granted the City's motion to dismiss, finding it owed no duty to Olena as a matter of law because the accident occurred on a street where bicyclists are permitted, but not intended users. This appeal followed.

¶ 7                                            ANALYSIS

¶ 8 At the outset, we must address deficiencies with Olena's briefs filed with this court. Illinois Supreme Court Rule 341(d) requires the cover of the brief to include "the individual names and addresses of the attorneys and their law firm." Ill. S. Ct. R. 341(d) (eff. Jan. 20, 1993). Olena's reply brief did not include the address of the attorney who filed the brief.

¶ 9 Further, Supreme Court Rule 341(h)(6) provides that the statement of facts in the brief "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Olena's one-paragraph statement of "facts" merely sets forth the allegations of the complaint which were not proven facts, without labeling them as such, and provides no mention of the facts harmful to her case contained in Smith's certification. Olena's brief fails to provide this court with a fair statement of facts necessary to an understanding of this case.

¶ 10 As we stated in *North Community Bank v. 17011 South Park Avenue, LLC*, 2015 IL App (1st) 133672, ¶ 14:

> "Supreme court rules are not mere suggestions; they are rules that must be followed. Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal. In addition, this court may strike an appellant's brief for noncompliance with Rule 341." (Internal citations and quotation marks omitted.)

3

¶ 11    We recognize, however, that striking a brief or dismissing an appeal is a particularly harsh sanction. See *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Although this deficient brief complicates, but does not completely frustrate our review, we will consider the merits of the appeal.

¶ 12    Olena argues on appeal that the dismissal of her complaint was improper because the City owed her a duty to maintain the roadway adequately. She contends that she was a permitted and intended user of that roadway as a bicyclist and that section 3-102(a) of the Tort Immunity Act does not shield the City from its duty of reasonable care to bicyclists. Olena argues that physical manifestations of intent existed on Marcey Street on the date of her accident under the City's municipal code, regardless of whether the roadway included a marked bicycle lane. She also contends that evidence of the City's intent outside of physical manifestations on the street itself should be assessed in this case to determine whether she was an intended user of the roadway as a bicyclist. She points to historical use of the roadway in addition to customary use of municipal property as relevant factors in determining municipal intent, which the circuit court failed to consider prior to dismissing her complaint. Manifestations of intent were included in the City's municipal code, notably, the adoption of the 2013 Bicycle Safety Ordinance proposal, otherwise known as the Chicago "dooring law," under section 9-80-035 of the municipal code, as well as elsewhere in the municipal code, wherein bicyclists have been granted all the rights and duties given to motorists. Chicago Municipal Code §§ 9-80-035 (adopted Mar. 12, 2008), 9-52-010 (amended June 5, 2013). Finally, she argues that the statement of the City's former mayor, Rahm Emanuel, "to make Chicago the most bike friendly city in the United States," the addition of the City's Divvy bicycle sharing program, and the Department of Transportation's "Streets for Cycling

Plan for 2020," demonstrated the City's intention that bicyclists use all roads, including streets with unmarked bicycle lanes.

¶ 13    A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint, but raises defects or other matters either internal or external from the complaint that would defeat the cause of action. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995). The circuit court should not grant a section 2-619 motion unless it is clear that no set of facts could ever be proved that would entitle the plaintiff to recover. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 280 (1982). Dismissing a cause of action under section 2-619 efficiently allows for the disposal of issues of law or easily proved facts early in the litigation process. *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 158 (1999). We review *de novo* the dismissal of a cause of action pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)).

¶ 14    To state a claim for negligence, a plaintiff must plead and prove that "the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19. In this case, Olena argues that the City was negligent, among other things, in how it permitted a roadway defect to form and/or remain on the roadway after having knowledge of the defect for a period of time prior to April 6, 2019. The City responds that it owed no duty to Olena because she was not a permitted *and* intended user of the roadway on the date of the incident.

¶ 15    Local public entities have a common law duty to exercise ordinary care to maintain public property in a reasonably safe condition. See *Monson v. City of Danville*, 2018 IL 122486, ¶ 24. This duty has been codified under section 3-102(a) of the Tort Immunity Act (745 ILCS 10/3-

102(a) (West 2018)), which limits the duty of a local government entity to maintain its property. *Id*. Section 3-102(a) provides in pertinent part:

"[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." 745 ILCS 10/3-102(a) (West 2018).

¶ 16    Under section 3-102(a), a local government entity is immune from liability for the failure to maintain its property in a reasonably safe condition unless the plaintiff was engaged in a use of the property that was both intended and permitted by the local government entity. See *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524-26 (1998). "Thus, according to the [Tort Immunity] Act, a municipality owes a duty of care only to those who are both intended and permitted users of municipal property." *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 49. Our supreme court has found that "[t]he Illinois legislature has expressly limited the duty of a municipality with regard to maintaining its property to a duty of ordinary care to permitted and intended users of the property." *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 163 (1995). Further, "the duty of a municipality depends on whether the *use* of the property was a permitted and intended use." (Emphasis added.) *Boub*, 183 Ill. 2d at 526.

¶ 17    Olena, both relying upon and distinguishing *Boub*, argues that to determine the City's intended use of property, this court should look to the nature of the area, the historical use of the area, and any laws governing the area. Considering those factors, she contends that traffic signals, stop signs, lane markings, and other physical manifestations of intent existed on the roadway, each of which are applicable to bicyclists under the municipal code, whether a marked bicycle lane

exists on a particular street or not. She argues that such a sweeping application of physical road markings to bicyclists by a local government was not present in *Boub*, as nothing in the supreme court's decision indicated that the government entity's municipal code contained any specific regulations. In contrast, the City's municipal code demonstrates examples of "physical manifestations of intention by the local governing entity for cyclists to use all roads within the city, since the [City] has explicitly made such physical manifestations as applicable to bicycles as they are to vehicles." Olena argues that, while the *Boub* court concluded that site specific physical evidence was relevant in determining the intent of a municipal defendant regarding use of roadway, it did not hold that such on-site physical evidence is the *only* kind of evidence that can or should be considered in determining municipal intent.

¶ 18    In *Boub*, the plaintiff sustained injuries in a bicycle accident while riding on a Wayne Township bridge. At the time of the accident, the bridge was undergoing a renovation and some wooden planks had been removed in preparation for the installation of a different bridge deck. The plaintiff claimed he was thrown from his bicycle when the front tire became stuck between two of the planks on the bridge. The circuit court granted the defendants' motion for summary judgment and the appellate court affirmed.

¶ 19    The supreme court considered whether the plaintiff was an intended and permitted user of the road and bridge where the accident occurred. Citing *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426 (1992), the *Boub* court explained that to determine the intended use of the property, " 'we need look no further than the property itself' " as an indication of intended use. *Boub*, 183 Ill. 2d at 526 (quoting *Wojdyla*, 148 Ill. 2d at 426). The *Boub* court also considered similar reasoning in *Vaughn*, which rejected the notion that the manner in which a particular injury occurs is relevant in determining the scope of a municipality's duty under section 3-102(a) of the Tort Immunity Act.

7

The *Vaughn* court held that "the question of whether a municipality owes a duty does not depend on whether the plaintiff-pedestrian was struck by a moving vehicle or tripped over a pothole, but rather depends on whether the municipality intended that the plaintiff-pedestrian walk in that part of the street where the injury occurred and permitted the plaintiff-pedestrian to do so." 166 Ill. 2d at 162-63. Finally, the *Boub* court considered the reasoning in *Sisk v. Williamson County*, 167 Ill. 2d 343, 351-52 (1995), in which the plaintiff struck a bridge with the car he was driving, got out to investigate the damage to his vehicle, and fell into a creek bed below when he stepped off the edge of the pavement obscured by weeds. The *Sisk* court found distinguishable cases allowing recovery when persons are injured by conditions of the pavement in areas where cars are intended to park. The *Sisk* court found "no such manifestations to indicate that Williamson County intended pedestrians to walk on its country roads, much less the specific road and bridge" from which the plaintiff complained. 167 Ill. 2d at 351-52. No walkways or crosswalks existed on the rural country road upon which the accident occurred. The *Sisk* court concluded that "the inference to be drawn from these facts, if any, is that municipalities do not intend that pedestrians walk on rural country roads. Although it may become necessary at times for pedestrians to walk on country roads, such use is not a manifestation of the local municipality's intent that pedestrians walk on its country roads or an undertaking by the municipality to make country roads free from defects that might injure pedestrians." *Id.*

¶ 20    Guided by the reasoning in *Wojdyla*, *Vaughn*, and *Sisk*, the *Boub* court recognized the factual differences between cases involving pedestrians and bicyclists. The court stated, "[b]icyclists, unlike pedestrians, are guided by some of the same signs and pavement markings that motorists observe. Still, we believe that the same considerations present in our decisions in those cases are also relevant here in determining whether the plaintiff was an intended user – rather

than simply a permitted user – of the road and bridge." 183 Ill. 2d at 528. The *Boub* court found no affirmative manifestations that Wayne Township intended, rather than simply permitted, bicyclists to use the road and bridge where the accident occurred. *Id*. at 535-36. "No special pavement markings or signs indicated that bicyclists, like motorists, were intended to ride on the road or bridge, or that bicycles, rather than vehicles, were the intended users of the route." *Id*. at 528. The court concluded that it had "no quarrel with the proposition that bicycle riders are permitted users of the road and bridge involved in this case," but specifically held that bicyclists were not "considered intended users of those facilities, within the scope of section 3-102(a) of the Tort Immunity Act." *Id*. At 536.

¶ 21    The plaintiff in *Boub* also argued that certain state statutes applicable to bicyclists were relevant in determining that the defendants' intent regarding the use of the road and bridge. *Id*. At 529. The court found that those statutes were irrelevant because they reflected the intent of another public body and failed to support the plaintiff's position. The court stated that the "provision cited by the plaintiff is entirely consistent with the conclusion that bicyclists are permitted, but not intended, users of the roads, in the absence of specific markings, signage, or further manifestation of the local entity's intent that would speak otherwise." *Id*. At 530.

¶ 22    In its holding that the defendants were immune under section 3-102(a) of the Tort Immunity Act, our supreme court reasoned that the legislature did not intend to impose liability under the factual circumstances presented, and explained the potential policy implications of finding bicyclists to be intended users under such a broad scope:

"Simply put, many road conditions that do not pose hazards to vehicles may represent special dangers to bicycles, and imposition of liability in this case would, we believe, open the door to liability for a broad range of pavement conditions,

such as potholes, speed bumps, expansion joints, sewer grates, and rocks and gravel, to name but a few. By the same token, we believe that imposition of municipal liability in the circumstances shown here is more appropriate for the legislature to initiate, if it is to be done at all. In this regard, it is appropriate to consider the potentially enormous costs both of imposing liability for road defects that might injure bicycle riders and of upgrading road conditions to meet the special requirements of bicyclists." *Boub*, 183 Ill. 2d at 535.

¶ 23    We are compelled to follow our supreme court's ruling in *Boub*, as we cannot distinguish the facts of this case from *Boub*, despite Olena's argument that we should depart from its findings. As stated in *Boub*, it is the province of the legislature to expand the scope of liability and we decline to do so here.

¶ 24    Plaintiff in this case also argues that, while physical markings on roadways are relevant in determining the intent of the governing body and, thus, whether a duty exists, they are not dispositive of the issue, and other factors can and should be considered when determining the intent of a municipal defendant. Plaintiff concedes there were no marked bicycle lanes on Marcey Street on the date of the accident, but statements from the mayor's office and the City's municipal code demonstrated evidence of intent that the circuit court failed to consider.

¶ 25    In *Latimer v. Chicago Park District*, 323 Ill. App. 3d 466, 470 (2001), the street where the plaintiff was injured was not marked or signed to reveal an intent on the part of the city that she ride her bicycle there. The plaintiff argued, however, that the absence of pavement markings or signs where the accident occurred did not dispose of her claim and that certain parts of the City's municipal code demonstrated that the defendant intended bicyclists to use city streets. The plaintiff in *Latimer* cited section 9-52-020 of the City's municipal code, which states that adults are

prohibited from riding bicycles on sidewalks, as evidence of intent that adults are supposed to ride bicycles on the streets. Here, Olena cites in support of her case sections 9-52-020 and 9-80-035 of the municipal code, known as the "dooring law," which makes it a violation for a passenger or driver in a vehicle to open a car door directly into moving traffic, as evidence indicating an intent by the City for bicyclists to use all roads within city limits safely and not merely within marked bicycle lanes. Chicago Municipal Code §§ 9-80-035 (adopted Mar. 12, 2008). Similar to *Latimer*, however, sections 9-80-035 and 9-52-020 of the municipal code never announce that bicyclists are intended users of city streets. See *Latimer*, 323 Ill. App. 3d at 471. Indeed, *Latimer* specifically noted the intent expressed in the City's municipal code as to bicyclists under section 9-52-020(d): "[i]t is our intent that when riding a bicycle, you use marked bicycle lanes, where we have assumed a duty to provide safe passage." *Id.* At 471-71 (citing Chicago Municipal Code §§ 9-52-020(d) (1990), 9-52-010 (amended June 5, 2013)). The court in *Latimer* held that, "[b]ecause the street where plaintiff was injured was not marked or signed to suggest that it was intended for use by bicycles, and because the [municipal code] contains no provisions that suggest that defendant intends, rather than permits, bicyclists to use the city streets, plaintiff is not entitled to damages under the Tort Immunity Act." *Id.* At 473. We find *Latimer* to be well reasoned, and we follow it here. Contrary to Olena's claims, nothing in the City's municipal code suggests the City had a duty to maintain its streets in a condition reasonably safe for bicyclists. Furthermore, Olena's assertion that direct statements from the Mayor's office and the City's Department of Transportation that encourage cycling establish that bicyclists are intended users is also unpersuasive. The municipality's intent is inferred from markings or signs; moreover, the language used by the legislature in drafting the City's Municipal Code is usually the best indication of the drafter's intent. *Id*. at 471.

¶ 26    Finally, Olena claims that even if Marcey Street was not intended for bicyclists' use in the manner the City intended, use by a bicyclist of a non-designated roadway was necessary to get to and from a marked bicycle route and, therefore, use of the unmarked roadway must have necessarily been intended by the City, citing *Curatola v. Village of Niles*, 154 Ill. 2d 201, 215 (1993) (pedestrian use of the street was mandated to enter and exit a legally parked vehicle). However, the narrow exception enumerated in *Curatola* applies only in the limited situation where a pedestrian is in the immediate area surrounding a legally parked vehicle from which the pedestrian entered or exited. *Curatola*, 154 Ill. 2d at 215. Under the facts of this case, we find no basis to apply or extend this exception.

¶ 27    In sum, the duty of care is determined by the municipality's intended use of a property, not the intent of the user. *Id*. at 468. "To hold otherwise would negate section 3-102(a), as the use intended by the municipality would not control." *Id*. In this case, Olena has failed to demonstrate the City's intent that bicyclists are both permitted *and* intended users of the street where the accident occurred. We find that Olena was not an intended user of the roadway in question on the date of the accident and, therefore, the City did not owe her a duty of care under 3-102(a) of the Tort Immunity Act.

¶ 28                                  CONCLUSION

¶ 29    We affirm the judgment of the circuit court of Cook County dismissing Olena's complaint under section 2-619(a)(9) of the Code.

¶ 30    Affirmed.