(No. 71564.

EVELYN WOJDYLA, Indiv. and as Adm'x of the Estate of Eugene Wojdyla, Deceased, Appellant, v. THE CITY OF PARK RIDGE *et al.*, Appellees.

*Opinion filed April 16, 1992.—Rehearing*
*denied June 1, 1992.*

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring and William J. Jovan, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John T. Coleman, Robert W. Smyth, Jr., Michael A. Pollard and Maureen J. McGinnis, of counsel), for appellee City of Park Ridge.

Lord, Bissell & Brook, of Chicago (Evan A. Burkholder, Hugh C. Griffin, L. Anthony Lehr and Diane I. Jennings, of counsel), for appellee Commonwealth Edison Co.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff, the wife of the decedent, Eugene Wojdyla, filed a complaint in circuit court of Cook County against the City of Park Ridge (City) and Commonwealth Edison Company (Edison). The decedent was struck by an automobile while crossing a highway located in Park Ridge, Illinois. Plaintiff alleged negligence in the placement and maintenance of streetlights on the highway, preventing the driver of the vehicle which struck the decedent from seeing him, and which eventually led to his death. The circuit court granted the City's and Edison's motions for summary judgment, and the appellate court affirmed. (209 Ill.

App. 3d 290.) On motion of the plaintiff, pursuant to Supreme Court Rule 316, a certificate of importance was issued, establishing jurisdiction in this court. We affirm.

The decedent, Eugene Wojdyla, initially sustained injuries at approximately 5 p.m. on December 29, 1976, while attempting to cross Busse Highway in Park Ridge, Illinois. A car driven by Brice Miller, traveling 30 to 35 miles per hour, struck the decedent in the lane closest to the center line of the highway. The plaintiff's complaint alleges the decedent eventually died as a result of the injuries sustained in this collision.

The highway at that point is a six-lane State highway, including lanes for parking on both sides, with a posted speed limit of 40 miles per hour. Wojdyla's car was parked across the street from his place of employment. He attempted to cross the highway midway between two T-intersections, while the nearest painted crosswalk was approximately one-half mile in either direction. Streetlights were placed 300 to 350 feet apart on one side of Busse on this stretch of the highway. It is unknown which side of the street the lights were placed since neither party or even the record indicates the location of the streetlights. Miller stated in his deposition that he never saw the decedent before the collision. There were no signs or markings at the point where the decedent crossed that indicated it was safe to cross the highway. The City's potential liability results from an agreement between the State of Illinois and the City of Park Ridge. Edison erected the lights lining Busse Highway. The plaintiff has stated that Edison's duties were co-extensive with the City's. Since Edison's liabilities cannot be any greater than those of the City, the opinion will address itself primarily to the City.

The only issue we must address here is whether the circuit court properly granted the defendants' motion for summary judgment. Summary judgments are desirable when, according to the pleadings, affidavits, and deposi-

tions on record, no genuine issue of material fact exists. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) Thus, where a suit may be determined according to a question of law, a trial court may properly dispose of the case on a summary judgment motion. *Allen v. Meyer* (1958), 14 Ill. 2d 284, 292.

Plaintiff here has alleged negligence on the part of the defendants. To properly state a cause of action for negligence, the plaintiff must establish that the defendant owed a duty of care, a breach of that duty, and an injury proximately caused by the breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) Whether or not the duty of care exists is a question of law to be determined by the court (*McLane v. Russell* (1989), 131 Ill. 2d 509, 514), and thus may be determined on a motion for summary judgment.

Plaintiff presents two arguments to support her view that the defendants owed a duty of care to the decedent. She argues first that a duty existed because the decedent was an intended and permitted user of the street en route to his legally parked car. This argument is based upon section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a)). She also argues that a duty to provide adequate lighting for the decedent arose when defendants provided lighting on Busse Highway. This argument assumes a duty of care regardless of whether the decedent was an intended and permitted user of the highway under the Tort Immunity Act.

Section 3—102(a) of the Tort Immunity Act reads as follows:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in

which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).)

Thus, for a pedestrian to be protected in the present circumstances by the statute, he must be an intended and permitted user of the property under the control of the city.

Plaintiff has cited several cases in support of her view that the decedent was an intended and permitted user of the highway. In *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, the plaintiff was injured when he stepped into an open sewer manhole on a grass-covered parkway, located between the sidewalk and the street, owned by the city. While approaching an intersection, he noticed that the sidewalk across the street was muddy and had no clean path on which to walk. When he reached the opposite side of the street, rather than walk on the muddy sidewalk, he walked onto the parkway between the sidewalk and the street. While doing so, he stepped into an open manhole, sustaining injuries. The trial court granted a motion for summary judgment to the defendant. The appellate court reversed and this court affirmed. The city had admitted that the plaintiff was a permitted user of the parkway, and this court concluded, based upon the facts, that the plaintiff was an intended user as well.

*Marshall* is distinguishable from the case at bar, however. First, in *Marshall*, the municipal property in question was a grass-covered parkway, not a highway. The use of the parkway by the plaintiff presented no conflict to the court between contrary purposes. The pedestrian there was determined to be an intended user of the parkway because his use of the parkway was a customary one. Fur-

thermore, there were no other purposes for the parkway which would preclude the intended use by the plaintiff. The situation in the case at bar is different, however. Here, the purpose of the highway is clearly for the use of automobiles. The lines in the street and the signs by the road are intended for use by vehicular traffic, and the overhead streetlights are spaced according to design to light the way for fast-moving vehicles. Thus, the present situation presents the court with a purpose which conflicts with that argued by the plaintiff. This situation of conflicting purposes on municipal property was not addressed in *Marshall*.

Plaintiff and the dissent in the appellate court decision (209 Ill. App. 3d at 298 (Egan, J., dissenting)) cite *Molway v. City of Chicago* (1909), 239 Ill. 486, to support the view that pedestrians are intended users of the street. In *Molway*, the court rejected any argument that a street is designed and built solely for vehicular traffic, holding in this instance that the duty to maintain a street extended to a bicycle rider hitting a hole in the street. However, *Molway* occurred before the advent of modern travel. The primary mode of vehicular traffic consisted of horse-drawn carriages, which rarely achieved the speed of vehicles on modern highways. Vehicular and pedestrian travel could safely exist side by side on the roadway. Circumstances change, however, a fact which *Molway* acknowledged:

> " 'In the most primitive state of society the conception of a highway was merely a foot-path; in a slightly more advanced state it included the idea of a way for pack animals; and next a way for vehicles drawn by animals ***. And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times and never dreamed of by the owners of the soil when the public easement was acquired.' [Citation.]" (*Molway*, 239 Ill. at 491.)

This historical perspective still holds true, for the developer of modern highways now creates the design for the benefit of automobiles and other vehicles, and rarely for pedestrians.

Additionally, plaintiff and the dissent in the appellate court quote the following language from *Molway* to support the assertion that pedestrians are intended users of the street: " 'A street is made for the passage of persons and property, and the law cannot define what exclusive means of transportation and passage shall be used.' " (239 Ill. at 490.) This language, however, is taken from an opinion written in 1859 concerning the right-of-way of a railroad. (*Moses v. Pittsburg, Fort Wayne & Chicago R.R. Co.* (1859), 21 Ill. 515, 522.) Considering the time and manner of the case from which the quote was taken, we cannot attach significance to it in the present context.

Nevertheless, plaintiff argues the decedent was an intended user of the highway because his car was parked in the street, and gaining access to his car required travel on the street itself. Plaintiff argues several appellate court decisions support this theory. In *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, the plaintiff was injured when he fell into a hole in the street. The hole was located a few feet from the plaintiff's vehicle. The appellate court determined that the plaintiff was an intended and permitted user of the street under the Tort Immunity Act, and reversed the trial court's grant of summary judgment for the defendant. The court noted, however, the city "must have recognized the necessity of pedestrians walking in the street and using a portion of it as a pathway, as means of ingress and egress to and from their vehicles." (*Di Domenico*, 171 Ill. App. 3d at 295.) The decedent in the case at bar, however, was not in the area directly around his car, but the middle of the highway; thus *Di Domenico* is distinguishable.

Plaintiff also cites *Princivalli v. City of Chicago* (1990), 202 Ill. App. 3d 525, in support of this argument. *Princivalli* involved a plaintiff who was injured when she stepped in a pothole while crossing the street "mid-block." The appellate court reversed the trial court's grant of summary judgment for the defendant. The court did not, however, conclude that the plaintiff was an intended user of the street at the time of her injuries, but rather remanded the issue to the trial court for just such a determination because it was not addressed properly at the trial court level. Thus, *Princivalli*, too, is distinguishable.

We note that those cases cited by the plaintiff in which the site of the accident was detailed generally occurred directly around the parked vehicle. The present situation is dissimilar. A person exiting from his car is an intended user of the space around his car, as our appellate court has noted. (*Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293.) The use of parking lanes mandates that individuals have access to the street for the ingress to and egress from the car. Those lanes designated for the use of moving vehicles, however, are not designed for use by pedestrians but for automobiles, and so no duty attaches when pedestrians cross these traffic lanes outside of crosswalks.

Plaintiff asserts the location of the decedent at the time of his injury is irrelevant to our inquiry of whether the defendants owed a duty of care, and the key factor to be considered is the purpose in which he was engaged, in this case the approach to his legally parked car. We do not agree. Municipalities may have control over adjoining pieces of property which have different uses, such as sidewalks and streets. Were we to measure the duty of care by the intent of individuals traveling over these various properties, we would effectively negate section 3—102(a) of the Tort Immunity Act, for no longer would the intended use by the municipality be controlling. Instead, the intent of

any particular individual would determine whether the municipality owed a duty of care. This argument is in direct conflict with the Tort Immunity Act, and thus is unavailing to the plaintiff.

To determine the intended use of the property involved here, we need look no further than the property itself. The roads are paved, marked and regulated by traffic signs and signals for the benefit of automobiles. Parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use. That pedestrians may be permitted to cross the street mid-block does not mean they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose. Marked or unmarked crosswalks are intended for the protection of pedestrians crossing streets, and municipalities are charged with liability for those areas. Those areas do not, however, include a highway in mid-block.

Having determined that the decedent was not an intended and permitted user of the highway at the time of the accident, we now turn to the question of whether the placement of streetlights entitled him to adequate illumination while crossing the highway, regardless of whether he was an intended and permitted user.

This court long ago recognized that a municipality is not required to provide improvements such as lights or crosswalks, although where it endeavors to do so it must not be negligent in this undertaking. (*City of Freeport v. Isbell* (1876), 83 Ill. 440, 442.) Plaintiff asserts that when the City erected lights and provided for parking on Busse Highway, it undertook a concommitant duty to illuminate the street for those pedestrians en route to their parked automobiles.

Plaintiff relies upon *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, in which this court addressed the issue of adequate lighting along public streets. *Baran* involved a motorist who was injured when he failed to make a turn at a T-intersection. He was driving on the street which "dead-ended" at the intersection. He contended that the overhead lights installed by the City were negligently placed, and prevented him from seeing the layout of the approaching intersection. Such negligence caused him to crash and sustain injuries. In determining the liability of the City, we noted that when a city undertakes to provide lighting, it must take responsibility when such lighting is deficient or inadequate. (*Baran*, 43 Ill. 2d at 180.) We did not address the situation of whether the plaintiff was an intended user of the street at the time of his injuries. However, as a motorist he was clearly an intended user of the street. As the decedent here was not an intended user, this case provides plaintiff with little support.

Plaintiff also cites in support of her argument *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, in which a motorist was injured when his car stalled on a city street and he was hit by another motorist while retrieving a flare from his trunk. The overhead streetlights were out, and the plaintiff alleged negligence in the maintenance of the lights. Although we determined the City had a duty to the plaintiff there as well, again the motorist was an intended user of the street. Thus, neither *Greene* nor *Baran* supports plaintiff's argument that the City owed the decedent a duty regardless of the intended use of the property, and so plaintiff's argument must fail.

Plaintiff cites additional cases on the issue of insufficient lighting: *City of Chicago v. Powers* (1866), 42 Ill. 169, where the city was found liable to plaintiff when her decedent fell through an opening on a city bridge and drowned on account of insufficient lighting on bridge; and *City of*

*Freeport v. Isbell* (1876), 83 Ill. 440, where the city could have been found liable for providing insufficient lighting to afford proper protection had it assumed the duty to illuminate the street where the appellee fell from the sidewalk into an excavation under the same. These, too, are distinguishable for the injured parties in both instances were intended users of the area where they were injured.

In arguing that the City in the case at bar is liable for injuries suffered solely by virtue of erecting streetlights, the plaintiff is asking this court to mandate that whenever a municipality erects streetlights, it must provide adequate lighting for all who may foreseeably use the street. Foreseeability alone, however, is not the standard for determining whether a duty of care exists here. Section 3—102(a) of the Tort Immunity Act does not base duty solely on foreseeable users, but upon intended and permitted foreseeable users. Since we have determined the decedent was not an intended user, this argument must fail.

Plaintiff also asserts that it would be unreasonable to expect the decedent to have walked the mile round trip which would have been necessary to use a crosswalk to cross the street to his legally parked car. Plaintiff's argument here, in essence, is that the absence of a crosswalk shows or creates an intent by the City that pedestrians be allowed to cross highways at will wherever street parking is allowed, and that the City, when it illuminates a street, must light the street adequately for their use. Inasmuch as the City is not required to provide crosswalks in the first place, we fail to see how the absence of crosswalks can give rise to such a duty.

For the foregoing reasons, we affirm the decisions of the appellate court and circuit court.

*Affirmed.*