DONNITA LATIMER, Plaintiff-Appellant, v. THE CHICAGO PARK DISTRICT, Defendant (The City of Chicago, Defendant-Appellee).

First District (2nd Division)   No. 1—99—0781

Opinion filed June 12, 2001.

---

Clifford Law Offices, of Chicago (Robert A. Clifford, Timothy P. Rhatigan and Robert P. Sheridan, of counsel), for appellant.

Mara S. Georges, Corporation Counsel of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Joseph H. Kim, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Donnita Latimer brought this negligence action against defendant, the City of Chicago, seeking damages for injuries she sustained in a bicycle accident on a Chicago street. The circuit court

granted defendant's motion for summary judgment, finding that plaintiff was a permitted but not intended user of the street. On appeal, plaintiff contends that the trial court erred in ruling that defendant was immune from liability under section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3—101 *et seq.* (West 1998)).

The complaint alleged that on October 7, 1993, plaintiff was injured when she fell from her bicycle on a part of Clyde Avenue where the pavement was broken and uneven. Plaintiff alleged that defendant had negligently maintained the street where she fell. Plaintiff does not dispute that the accident happened at a place on the street where there were no bicycle lane markings.

●1, 2 A complaint for negligence must establish that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the plaintiff sustained an injury proximately caused by the breach. *Marshall v. City of Centralia*, 143 Ill. 2d 1, 6 (1991). Whether the defendant owes a duty of care to the plaintiff is a question of law. *Marshall*, 143 Ill. 2d at 6. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with affidavits, present no genuine issue of material fact and show the moving party is entitled to judgment as a matter of law. *Wallace v. Metropolitan Pier & Exposition Authority*, 302 Ill. App. 3d 573, 576 (1998). Motions for summary judgment are reviewed *de novo. Wallace*, 302 Ill. App. 3d at 576.

●3 The duty of a municipality to maintain property is limited by section 3—102 of the Tort Immunity Act. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995). Under section 3—102(a), a municipality must "exercise ordinary care to maintain its property in a reasonably safe condition for the use *** of people whom the entity intended and permitted to use the property." 745 ILCS 10/3—102(a) (West 1998). The duty extends only to uses that are both permitted and intended. *Vaughn*, 166 Ill. 2d at 160. The duty of care is determined by the municipality's intended use of a property, not the intent of the user. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 425-26 (1992). To hold otherwise would negate section 3—102(a), as the use intended by the municipality would not control. *Wojdyla*, 148 Ill. 2d at 425. The intended use of the property may be determined by looking to the nature of the property. *Wojdyla*, 148 Ill. 2d at 426.

The issue whether bicyclists are intended or permitted users of Illinois streets was examined by the Illinois Supreme Court in *Boub v. Township of Wayne*, 183 Ill. 2d 520 (1998). In *Boub*, the plaintiff was cycling across a bridge when the front tire of his bicycle became stuck between two wooden planks of the bridge. The plaintiff was thrown

from the bicycle and injured. The plaintiff and *amici* argued on several grounds that the plaintiff was an intended user of the road and bridge where his accident occurred.

First, the plaintiff cited section 11—1502 of the Illinois Vehicle Code, which provides that bicyclists riding on streets possess all the rights and are subject to all the duties applicable to vehicle drivers. 625 ILCS 5/11—1502 (West 1998). According to the plaintiff, this section supports the conclusion that bicyclists are, like vehicle drivers, intended and permitted users of Illinois streets. The supreme court found such a conclusion unsupported by section 11—1502 and found instead that the provision was designed to ensure that bicyclists obey traffic laws, for their own safety and for the safety of others. *Boub*, 183 Ill. 2d at 529-30.

Next, *amici* argued that because bicyclists' use of the roads is both customary and traditional, it must also be both permitted and intended. The supreme court found that historical practice alone is insufficient to establish whether a particular use of public property is an intended one. *Boub*, 183 Ill. 2d at 531. Third, *amici* observed that the portion of the road where the accident happened was designated "a through street generally suitable for bicycling" by the Du Page County board. *Boub*, 183 Ill. 2d at 532. The supreme court found that such designation was consistent with the conclusion that bicyclists were not intended but merely permitted users of the road. *Boub*, 183 Ill. 2d at 532.

Fourth, the plaintiff argued that to hold that bicyclists are permitted but not intended users of streets is inconsistent with the holding in *Molway v. City of Chicago*, 239 Ill. 486 (1909). The supreme court concluded that because *Molway* was decided more than 50 years before the Tort Immunity Act was enacted, *Molway* was not controlling. *Boub*, 183 Ill. 2d at 533-34. Fifth, the plaintiff argued that to hold that bicyclists are permitted but not intended users of Illinois streets conflicts with the holdings of *Filipetto v. Village of Wilmette*, 254 Ill. App. 3d 461 (1993), and *Bauer v. H.H. Hall Construction Co.*, 140 Ill. App. 3d 1025 (1986). The supreme court found that neither of these cases discussed the plaintiff bicyclist's status as an intended and permitted user, and therefore neither case was persuasive. *Boub*, 183 Ill. 2d at 534.

Finally, *amici* invoked several policy considerations in favor of imposing liability on the defendant. The supreme court stated that the questions of policy raised by *amici* are better resolved by the legislative branch of government than by the judicial branch. *Boub*, 183 Ill. 2d at 535.

Citing *Wojdyla, Vaughn v. City of West Frankfurt*, 166 Ill. 2d 155

(1995), and *Sisk v. Williamson County*, 167 Ill. 2d 343 (1995), the *Boub* court looked to the nature of the property to determine whether the plaintiff was an intended and permitted user of the road and bridge where he was injured. The court reasoned that the intent of the defendant, Wayne Township, could be determined from "pavement markings, signs, and other physical manifestations of the intended use of the property." *Boub*, 183 Ill. 2d at 528. The court found that there were no signs or markings to indicate that bicyclists, like motorists, were intended to ride on the road or bridge. Therefore, the court held that the plaintiff was not an intended user and was not entitled to recover damages under the Tort Immunity Act. *Boub*, 183 Ill. 2d at 535-36.

To clarify its holding, the supreme court in *Boub* distinguished the facts before it from those of *Cole v. City of East Peoria*, 201 Ill. App. 3d 756 (1990). There, the plaintiff, a bicyclist, was injured when his tire became stuck in a sewer grate. The appellate court concluded that special pavement markings showed that the defendant municipality intended and permitted bicyclists to travel where the accident happened. Therefore, the municipality was liable for the plaintiff's injuries. The distinction between *Boub* and *Cole* was the presence or absence of special markings or signs to show the municipality's intent with regard to bicyclists' use of the property. *Boub*, 183 Ill. 2d at 528.

Here, as in *Boub*, the street where plaintiff was injured was not marked or signed to reveal an intent on the part of the city that plaintiff ride her bicycle there. But plaintiff argues that the absence of pavement markings or signs where the accident happened does not dispose of her claim. She argues that certain parts of the Chicago Municipal Code (the Code) show that defendant intended bicyclists to use city streets. Although *Boub* discussed the Illinois Vehicle Code (625 ILCS 5/1 *et seq.* (West 1998)), the court recognized that under the Tort Immunity Act, the intent of the local public entity controls. *Boub*, 183 Ill. 2d at 529.

•4 Plaintiff's first argument under the Code is based upon the definitions of "street" and "traffic." Under the Code, a "street" is defined as "the entire width between boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of general traffic circulation." Chicago Municipal Code § 9—4—010 (eff. January 1, 1997). The Code defines "traffic" as "pedestrians, ridden or herded animals, bicycles, vehicles, and other conveyances *** while using any public way for the purposes of travel." Chicago Municipal Code § 9—4—010 (eff. January 1, 1997). Plaintiff argues that, because defendant includes bicycles in its definition of "traffic" and provides that streets are "for" general traffic

circulation, defendant has expressed an intention that the streets be used by bicyclists.

The definition of "street," however, does not include the word "intended." The omission of "intended" in the definition of "street" contrasts with its use in other definitions in section 9—4—010 of the Code. For example, the Code defines "roadway" as "that portion of a public way between the regularly established curb lines, or that part improved, and *intended to be used* for vehicular travel." (Emphasis added.) Chicago Municipal Code § 9—4—010 (eff. January 1, 1997). A "sidewalk" is also so defined: as "that portion of a public way between the curb, or the lateral lines of the roadway, and the adjacent property lines, *intended for the use of pedestrians*." (Emphasis added.) Chicago Municipal Code § 9—4—010 (eff. January 1, 1997). So the definitions both of "roadway" and "sidewalk" include the word "intended," while the definition of "street" provides merely that it is "open to the use of" the public for purposes of general traffic circulation. The language used by the legislature is usually the best indication of the drafters' intent. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993). No word or paragraph should be so interpreted that it is meaningless. *Collins*, 155 Ill. 2d at 111.

Plaintiff's second argument is based upon section 9—52—020 of the Code. Section 9—52—020(b) states that adults are prohibited from riding bicycles on sidewalks. Chicago Municipal Code § 9—52—020(b) (1990). Plaintiff reasons that because the city prohibits adults from riding bicycles on sidewalks, it therefore intends that adults ride bicycles on the streets. But section 9—52—020 never announces that bicyclists are intended users of city streets. Chicago Municipal Code § 9—52—020 (1990). Further, plaintiff cites no authority for the proposition that a ban on use in one place implies that the use is intended elsewhere.

The consequences of such a proposition would be untenable. Consider, for example, a municipality that has banned smoking in its government buildings. Although the municipality might permit smoking in the outdoor areas surrounding those buildings, it would be absurd to conclude that the municipality *intended* for people to smoke in such areas.

Plaintiff is essentially posing the question: If I cannot ride on the sidewalk, where does the city expect me to ride? The city has a codified answer: You are prohibited from riding on the sidewalk, and further, you are permitted to ride where we have not prohibited riding. See Chicago Municipal Code § 9—52—020(c) (1990). But it is our intent that when riding a bicycle, you use marked bicycle lanes, where

we have assumed a duty to provide safe passage. See Chicago Municipal Code § 9—52—020(d) (1990).

We find equally unpersuasive plaintiff's additional arguments based upon references to other sections of the Code. For example, plaintiff cites the statutory requirement that a person riding a bicycle upon a roadway shall ride as near as practicable to the right-hand side of the roadway. Chicago Municipal Code § 9—52—040(c) (1990). According to plaintiff, this rule manifests the city's intent that bicyclists use the roadways. However, that defendant regulates permitted uses does not transform the permitted uses into intended uses. As noted in *Boub*, "a broad range of permitted uses by different groups of users is compatible with an intended use only by vehicles." *Boub*, 183 Ill. 2d at 532, citing *Sisk v. Williamson County*, 167 Ill. 2d 343 (1995).

Plaintiff cites several cases in support of her argument that defendant's ordinances manifest an intent that its streets be used by bicyclists. See *Brooks v. City of Peoria*, 305 Ill. App. 3d 806 (1999); *Kavales v. City of Berwyn*, 305 Ill. App. 3d 536 (1999); *Sullivan v. City of Hillsboro*, 303 Ill. App. 3d 650 (1999). These cases are distinguishable.

In *Brooks*, the court found that the City of Peoria intended child bicyclists to use sidewalks, despite an ordinance that states a sidewalk is "intended for the use of pedestrians." *Brooks*, 305 Ill. App. 3d at 809. But the court reached this finding because other parts of the Peoria Municipal Code suggested that child bicyclists were intended users of the sidewalks. *Brooks*, 305 Ill. App. 3d at 811. We find no comparable language in the Chicago Municipal Code showing an intent that adult bicyclists use the city streets.

In *Kavales*, a pedestrian was found to be an intended user of the junction of a public alley and a street—more specifically, where the sidewalk converged with the alley. However, in *Kavales*, the court found specific language in legislation that denoted an intent that pedestrians use such an area. See *Kavales*, 305 Ill. App. 3d at 543. There is no corresponding language in the Code.

*Sullivan*, too, is distinguishable. In *Sullivan*, the plaintiff was injured when he struck a submerged pipe while water skiing within 75 feet of the shore of a lake owned and maintained by the City of Hillsboro. A city ordinance prohibited water skiing within 75 feet of the shoreline. However, the court found that the harm suffered by the plaintiff was not the type of harm that the ordinance was enacted to prevent and that water skiers were not within the class for whose protection the ordinance had been passed. Rather, the ordinance had been passed to protect swimmers, sunbathers, and other users of the lake from potential hazards created by those who water ski. Because

the plaintiff did not suffer harm of the type that the ordinance was enacted to prevent, and was not within the class for whose protection the ordinance was passed, his violation of the ordinance did not relieve the city of its duty to exercise ordinary care to maintain its property in a reasonably safe condition. Specifically, the city had a duty to the plaintiff, a water skier, to exercise ordinary care to maintain in a reasonably safe condition the area of the lake within 75 feet of the shore, even though the plaintiff was prohibited from skiing there. *Sullivan*, 303 Ill. App. 3d at 654.

Here, there is no indication that the harm plaintiff suffered was not the type of harm that the ordinances in question were enacted to prevent or that she was not within the class for whose protection the ordinances were passed. The Code provides that bicyclists are intended to ride on bicycle paths, where the city has assumed a duty of care toward bicyclists. Chicago Municipal Code § 9—52—020(d) (1990). There is nothing in the Code that would suggest that the ordinance was passed to protect others, such as pedestrians, from bicyclists, rather than to protect bicyclists themselves. Therefore, *Sullivan* does not weigh in favor of a finding that defendant had a duty to maintain its streets in a condition reasonably safe for bicyclists.

Because the street where plaintiff was injured was not marked or signed to suggest that it was intended for use by bicycles, and because the Code contains no provisions that suggest that defendant intends, rather than permits, bicyclists to use the city streets, plaintiff is not entitled to damages under the Tort Immunity Act.

The judgment of the circuit court is affirmed.

Affirmed.

WOLFSON and BURKE, JJ., concur.