2022 IL App (1st) 210812
No. 1-21-0812
Opinion filed May 18, 2022

THIRD DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| CLARK ALAVE, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2019 L 010879 |
| | ) | |
| THE CITY OF CHICAGO, | ) | The Honorable |
| | ) | Gerald Cleary, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justices Ellis and Burke concurred in the judgment and opinion.

OPINION

¶ 1     This is a case of first impression. Plaintiff Clark Alave filed a complaint for negligence against defendant, the City of Chicago (City), as a result of falling off his privately owned bicycle as a result of hitting a pothole in the street at the crosswalk near a Divvy station at the intersection of West Leland Avenue and North Western Avenue. The City filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619(a)(9) (West 2018). The trial court granted the City's motion to dismiss, which claimed that plaintiff was not both a permitted and intended user of the roadway on which the accident occurred and so, as an affirmative matter, the City owed plaintiff no duty under section 3-102

of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). 745 ILCS 10/3-102 (West 2018). The motion to dismiss did not mention the fact that plaintiff was riding his bicycle through a crosswalk.

¶ 2    On this direct appeal, plaintiff claims that the trial court incorrectly concluded that the City owed him no duty under the Tort Immunity Act and that a series of factors demonstrate that the question of whether plaintiff was both a permitted and intended user of the roadway, and thus whether the City owed him a duty, is sufficiently unclear at this early stage of the proceedings to render inappropriate the trial's court decision to grant the City's motion to dismiss.

¶ 3    For the following reasons we reverse the decision of the trial court and remand for further proceedings.

¶ 4                                          BACKGROUND

¶ 5    On October 3, 2019, plaintiff filed a complaint for negligence against defendant, the City, in the circuit court of Cook County. That complaint was amended on December 12, 2019, and the amended complaint is the complaint at issue in the instant appeal. In the amended complaint, plaintiff alleged that on June 8, 2019, at about 9 p.m., plaintiff was riding his bicycle on the street westbound along the right side of West Leland Avenue when he struck a pothole that was in the crosswalk just before the intersection with North Western Avenue,[1] causing plaintiff to be thrown from the bicycle and to suffer injuries including fractured teeth, facial

---

[1]Plaintiff's complaint does not specify which street he was riding on near the intersection of West Leland Avenue and North Western Avenue, nor the direction of travel. However, the photograph of the pothole attached to the complaint, combined with plaintiff's allegation that he was riding on the right side of the street, indicate the street and direction of travel.

cuts, scarring, injury to his left hip, and injury to his right shoulder. Plaintiff alleged that the roadway was dark and partially illuminated by artificial lighting at the time of his injury.

¶ 6        A photograph of the pothole plaintiff allegedly struck, which was attached to the complaint, depicts a crater in the right lane of the street at West Leland Avenue and the crosswalk crossing it, approximately four feet from the curb. The pothole depicted in plaintiff's photograph appears to be four to five inches deep at its deepest point, with an inch or so at the bottom filled with loose gravel and debris. Plaintiff alleged that defendant had actual knowledge of the defect or would have had knowledge, had it exercised reasonable diligence.

¶ 7        Plaintiff further alleged that the City had in place, at the time of plaintiff's injury, an ordinance prohibiting bicyclists over the age of 12, like plaintiff, from riding bicycles on sidewalks. Chicago Municipal Code § 9-52-020(b) (amended Apr. 10, 2019). Plaintiff's complaint also alleged that the City either directly or knowingly permitted the erection of a Divvy bicycle rental station near the location of the incident at bar in this case. A Divvy station is a location where bicycles can be rented for use by the general public. Plaintiff's photograph of the pothole also depicts the Divvy station, which appears to be about 100 feet away from the pothole. Plaintiff was not riding a Divvy bicycle at the time of the accident but was using the roadway where bicyclists go to and from the Divvy station.

¶ 8        Plaintiff alleged that the City owed a duty to exercise reasonable care for the safety of intended and permitted users of the roadway, including plaintiff, and that the City breached that duty by failing to maintain the roadway in a safe state of repair, by failing to repair defects in the roadway surface, by failing to warn bicyclists of the pothole, by failing to light the pothole, by creating a situation that posed an unreasonable risk of injury to bicyclists, and/or by permitting a dangerous pothole to exist for an unreasonable amount of time. Plaintiff further

alleged that one of the listed acts or omissions by the City caused his accident and thereby his injuries and the associated damages.

¶ 9      On May 17, 2021, the City filed a motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code. 735 ILCS 5/2-619(a)(9) (West 2018). In the motion, the City argued that plaintiff was not an intended user of the roadway at the time of his accident and therefore the City owed him no duty under Tort Immunity Act.

¶ 10     The parties conducted limited written discovery in connection with the City's motion to dismiss. Among the documents produced during this limited discovery was a set of special interrogatories from plaintiff to the City and requests to produce from plaintiff to the City for eleven different sets of documents under Illinois Supreme Court Rule 214 (eff. July 1, 2018). Among the documents produced by the City was an affidavit from David Smith certified under section 1-109 of the Code. 735 ILCS 5/1-109 (West 2018). David Smith, speaking in his role as the projects administrator for the Chicago Department of Transportation, averred various things about an attached "2019 Chicago Bicycling Map" (bicycle map) and where bicycle paths do and do not exist relative to the site of plaintiff's accident. The bicycle map depicts officially designated bicycle lanes, as well as the locations of Divvy bicycle rental stations.

¶ 11     In plaintiff's response to the City's motion to dismiss, he argued that, since crosswalks are intended for use by pedestrians and bicyclists are pedestrians, he was a permitted and intended user of the roadway at the site of the incident. Plaintiff further argued that the City's admission in discovery that "it does not intend for people to walk their bicycles within city limits, while outside of a bicycle lane," rendered him a permitted and intended user of the roadway at the site of the incident. Plaintiff further argued that the text of the Tort Immunity Act, in referring to the City's duty of care to "permitted and intended users" meant not users who were both

intended and permitted, but users who were permitted as well as users who were intended. In the response, plaintiff implied but did not directly argue that municipal ordinances dictating how bicycles are to be used on municipal roadways convey intent that those roadways be used by bicyclists.

¶ 12    In the City's reply to plaintiff's response to the City's motion to dismiss, the City argued that the presence of a Divvy station did not convey intent, that there was no authority to support the argument that the city's ordinance prohibiting adults from riding bicycles on the sidewalk conveyed intent that they ride in the street, that bicyclists are not pedestrians and therefore are not intended users of crosswalks, that the city ordinances dictating how bicycles should be ridden on municipal roadways do not render bicyclists intended users of those roadways, that mere foreseeability of use does not render that use intended, and that the word "intended" should not be read as superfluous to the Tort Immunity Act.

¶ 13    On July 6, 2021, the trial court entered an order dismissing plaintiff's complaint with prejudice on the basis that plaintiff had not created a sufficient question of fact as to whether he was an intended user of the roadway. In reaching this conclusion, the trial court relied on the precedents of *Boub v. Township of Wayne*, 183 Ill. 2d 520, 528-529 (1998), and *Latimer v. Chicago Park District*, 323 Ill. App. 3d 466, 470 (2001), for the proposition that the intended use of a roadway is to be derived from markings on the roadway, signage, and other physical manifestations. Since there were no such markings or signage at the site of the accident, the trial court found that there was no question of fact to preclude the dismissal of the complaint because the map showed that plaintiff was traveling on his bicycle in an area that was not designated for bicycle traffic. The trial court further rejected plaintiff's argument that the Tort Immunity Act should be read to require a duty of care on the part of the City toward both

intended and permitted users, separately, as well as the plaintiff's argument that the incident occurring in a crosswalk rendered him an intended and permitted user.

¶ 14     Plaintiff filed a notice of appeal on July 12, 2021, and this timely appeal followed.

¶ 15                                        ANALYSIS

¶ 16     On appeal, plaintiff argues that a combination of factors, specifically the illegality of riding on the sidewalk at the accident site, the city's response to one of plaintiff's special interrogatories, and the proximity of a Divvy station to the accident site, sufficiently suggest that plaintiff was an intended user of the roadway to preclude the trial court's grant of the City's motion to dismiss under section 2-619. While plaintiff mentions that the incident occurred in a crosswalk in his appellate brief, he does not renew his argument that this renders him an intended user because bicyclists are pedestrians and crosswalks are intended for pedestrians, nor does he renew his argument that the scope of the Tort Immunity Act should be widened to include permitted users, nor does he renew his argument that municipal ordinances dictating how bicycles are to be ridden on municipal roadways render bicyclists intended users of those roadways. Those arguments are, accordingly, forfeited, but we address them nonetheless.

¶ 17     "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006); *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). "[T]he movant is essentially saying ' "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." ' " *Reynolds v. Jimmy John's Enterprises*, LLC, 2013 IL App (4th) 120139, ¶ 31 (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 792, (2008)). Dismissal is

permitted based on certain listed "defects" (735 ILCS 5/2-619(a)(1)-(8) (West 2020)) or some "other affirmative matter" (735 ILCS 5/2-619(a)(9) (West 2020)) outside the complaint. *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 18      On an appeal from a section 2-619 dismissal, our standard of review is *de novo*. *Hernandez v. Lifeline Ambulance LLC*, 2020 IL 124610, ¶ 14; *Solaia Technology*, 221 Ill. 2d at 579. *De novo* review means that we perform the same analysis a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). "Under the *de novo* standard of review, this court owes no deference to the trial court." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75 (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007)).

¶ 19      In ruling on a section 2-619 motion to dismiss, a court must interpret the pleadings and supporting materials in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). "[A] court must accept as true all well-pled facts in the plaintiff's complaint and any reasonable inferences that arise from those facts." *Hernandez*, 2020 IL 124610, ¶ 14. Additionally, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25; *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 59.

¶ 20      For a motion to be properly brought under section 2-619, the motion (1) must be filed "within the time for pleading" and (2) must concern one of nine listed grounds. 735 ILCS 5/2-619(a) (West 2020). In the case at bar, there is no indication that defendant failed to file a timely motion, so we turn to the grounds that defendant asserts.

¶ 21      A section 2-619 motion is permitted on only the following grounds:

"(1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.

(2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.

(3) That there is another action pending between the same parties for the same cause.

(4) That the cause of action is barred by a prior judgment.

(5) That the action was not commenced within the time limited by law.

(6) That the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

(8) That the claim asserted against defendant is unenforceable because of his or her minority or other disability.

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (West 2020).

¶ 22       Subsection (a)(9) permits dismissal when an affirmative matter outside of the pleadings bars the claim. 735 ILCS 5/2-619(a)(9) (West 2020). "Affirmative matter," in this context, "encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." (Internal quotation marks omitted.) *Daniels v. Union Pacific R.R. Co.*, 388 Ill. App. 3d 850, 855 (2009). Our supreme court has found: "Immunity from tort liability is an

affirmative matter that may properly be raised in a section 2-619 motion." *Hernandez*, 2020 IL 124610, ¶ 14. Thus, this issue was properly raised by defendant in its section 2-619 motion.

¶ 23    The Tort Immunity Act limits the common-law duties of municipalities. *Marshall v. City of Centralia*, 143 Ill. 2d 1, 5 (1991); *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993). Section 3–102(a) of the Act provides in pertinent part:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." 745 ILCS 10/3-102(a) (West 2018).

¶ 24    Thus, according to the statute, a municipality owes a duty of ordinary care only to those who are both intended and permitted users of municipal property. 745 ILCS 10/3-102(a) (West 2018). Because "the Act 'is in derogation of the common law,' " we must construe it strictly against the municipal defendant. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995) (quoting *Curatola*, 154 Ill. 2d at 208). "[A]n intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Boub*, 183 Ill. 2d at 524.

¶ 25    "[T]he duty of a municipality depends on whether the use of the property was a permitted and intended use. [Citation.] Whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself." (Emphasis omitted.) *Vaughn*, 166 Ill. 2d at 162-63. Therefore, the City's "[i]ntent must be inferred from the circumstances." *Sisk v. Williamson County*, 167 Ill. 2d 343, 351 (1995). In the case at bar, both parties agree that

plaintiff was a permitted user of the road; as a result, the only issue for us to decide is whether plaintiff was also an intended user.

¶ 26        In determining whether the City owes a duty of ordinary care to a user of municipal property, the relevant question is not whether the user was specifically intended but "whether the use *** was a permitted and intended use." (Emphasis omitted.) *Vaughn*, 166 Ill. 2d at 162. The intended use of property is determined by the City's intent, not the user's, and generally "we need look no further than the property itself." *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 425-426 (1992). The Illinois Supreme Court in *Boub* discussed its analysis in determining whether a bicyclist is an intended user of a roadway. *Boub*, 183 Ill. 2d at 525-526. The court stated:

> "[t]o resolve the plaintiff's status under section 3-102(a), it is appropriate to look at the property involved [in the accident] in determining whether the plaintiff may be considered an intended and permitted user ***. 'Whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself.' " *Boub*, 183 Ill. 2d at 525 (quoting *Vaughn*, 166 Ill. 2d at 162-163).

¶ 27        While plaintiff's argument that the incident taking place in a crosswalk rendered him an intended user was not renewed on appeal, it is nonetheless easily dispensed with. The argument depends on plaintiff's assertion that bicyclists are pedestrians and crosswalks are intended for pedestrians. While crosswalks are intended for pedestrians (*Boub*, 183 Ill. 2d at 526 ("Pedestrian walkways are designated by painted crosswalks ***." (internal quotation marks omitted))), bicyclists are not pedestrians. The Chicago Municipal Code defines pedestrians as "any person afoot" and separately defines a bicyclist as "a person operating a bicycle." Chicago Municipal Code § 9-4-010 (amended July 21, 2021). Our case law also recognizes this

distinction. *Boub*, 183 Ill. 2d at 528 (referring to "[b]icyclists, *unlike pedestrians*" relying on some of the same signage as motorists (emphasis added)). Accordingly, even if the City owed a duty to pedestrians to maintain the crosswalk up to a standard befitting pedestrian use, bicyclists are not pedestrians, and there is no authority to support the proposition that that duty extends to bicyclists. Furthermore, Alave was not a user of the crosswalk, as he was crossing it perpendicular to its path while using the roadway as a bicyclist. There is no argument made by the City, nor is there anything in state statute or city ordinances, that indicates that when plaintiff hit the pothole in the crosswalk, the fact that he was passing through the crosswalk would affect his status in determining whether he was an intended user of the road where the incident occurred.

¶ 28     Plaintiff's argument that the Tort Immunity Act should be read to require a duty of the City toward those who are permitted users and those who are intended users, rather than those who are both permitted and intended users, was also not renewed on appeal, but it is similarly unavailing. Plaintiff cites no case for authority that the Tort Immunity Act has ever been read in this way, and this court is unaware of any such case. Accordingly, we will follow existing supreme court precedent in agreeing with the trial court that a user must be both permitted and intended for a duty on the part of the City to exist under the Tort Immunity Act. *Vaughn*, 166 Ill. 2d at 160; *Boub*, 183 Ill. 2d at 537.

¶ 29     Plaintiff's argument that municipal ordinances dictating how bicycles are to be ridden on municipal roadways convey intent that bicyclists use those roadways was also not renewed on appeal, but even if it were raised, it would be unsuccessful. *Latimer* makes clear that ordinances regulating how bicycles are to be ridden in a given area do not make bicycles intended users of those areas. *Latimer*, 323 Ill. App. 3d at 472. Accordingly, we agree with the trial court that

municipal ordinances dictating how bicyclists use municipal roadways do not convey intent that bicyclists use municipal roads in the case at bar.

¶ 30     Accordingly, the only arguments that remain before this court are that the illegality of riding on the sidewalk at the accident site, the city's response to one of plaintiff's special interrogatories, and the proximity of a Divvy station to the accident site, each individually or in combination, sufficiently indicate that bicyclists, like plaintiff, were intended users of the roadway to preclude the trial court's grant of the City's motion to dismiss under section 2-619.

¶ 31     In the *Boub* case, our supreme court concluded in a 4 to 3 decision that bicyclists as a whole are not intended users of the roads in Wayne Township. *Boub*, 183 Ill. 2d at 535-536. It should be noted that the *Boub* decision was decided long before Divvy bicycle stations were placed in municipalities. In the case at bar, plaintiff is not contending that bicyclists as a whole are intended users of the streets in Chicago. Plaintiff is only contending in a very narrow sense that in the area where this accident occurred, which was adjacent to the area where there was a Divvy station, the bicyclists who use the area of the street adjacent to the Divvy station must use the area where the accident occurred to come and go from the Divvy station and, thus, when the city council allowed the placement of the Divvy station at that location, it intended that, in the specific area where this accident occurred, bicyclists be permitted and intended users of that specific area. If the city council intended that bicyclists were to be only intended users of streets and roads that are designated as bicycle lanes, it would have said so. We look at the ordinances of the City of Chicago to construe the City's intent, and there is no showing that it intended that bicyclists can only be permitted and intended for bicycle lanes only. We further take judicial notice that many of the Divvy stations in Chicago have no bicycle lanes in close proximity to the Divvy stations, which further shows us that the City intended that

bicyclists are intended users of the streets used by bicyclists in going to and from the Divvy stations.

¶ 32    In the case at bar, plaintiff does not claim that the location where the accident occurred was marked in any way to indicate that it was intended for bicycle use, and no markings are evident in the photograph of the accident site provided by plaintiff. Accordingly, if intent on the part of the City for this roadway to be used by bicyclists exists in the case at bar, it was not conveyed by street markings or street signs, nor is there any ordinance of the City or state statute that says that bicyclists can only ride their bicycles in bicycle lanes.

¶ 33    The City cites *Latimer*, 323 Ill. App. 3d at 470, for the prosposition that this court has previously rejected an argument that "the absence of pavement markings or signs where the accident happened does not dispose of her claim." This is an inaccurate reading of *Latimer*. The plaintiff in *Latimer* levied arguments extending beyond the examination of the road itself and therefore asserted that a lack of markings alone was insufficient to dispose of her claim. The *Latimer* court disposed of these further claims individually and ultimately found for the municipal defendant, but at no point did it assert that Latimer was wrong in asserting that a lack of markings, alone, was insufficient to dispose of her claim. *Latimer*, 323 Ill. App. 3d at 470-473. The City inaptly cites *Berz v. City of Evanston*, 2013 IL App (1st) 123763 for the same proposition; that case similarly disposed of the other arguments rather than precluding them.

¶ 34    Previous cases have also looked to custom to determine intended use. *Wojdyla*, 148 Ill. 2d at 422-423 (enumerating customary use of intersections as unmarked crosswalks as an indication of intended use); *Marshall*, 143 Ill. 2d at 9-10 (finding a duty of ordinary care regarding a pedestrian walking on a parkway without reference to any indicator of intent

13

beyond customary use). It is customary that bicycles be ridden in the street or on the sidewalk, depending on what is permissible by local ordinance. However, custom alone is insufficient. *Boub*, 183 Ill. 2d at 531 (rejecting the proposition that "historical practice alone is sufficient to make a particular use of public property an intended one"); *Sisk*, 167 Ill. 2d at 349 (asserting that common use does not dictate intended use).

¶ 35 Previous cases have also found that the necessity of a piece of property for a given purpose does not render that use an intended use. *Wojdyla*, 148 Ill. 2d at 424 (the absence of a crosswalk within half a mile does not render crossing the street mid-block an intended use); *Vaughn*, 166 Ill. 2d 161-162 (similarly regarding the lack of a crosswalk); *Sisk*, 167 Ill. 2d at 347 (the necessity that pedestrians sometimes walk on country roads is not a manifestation of the local authority's intent that pedestrians do so). However, when a use of property is a necessary part of the intended use indicated by the City, that use is also intended. *Curatola*, 154 Ill. 2d at 216 (truck driver unloading a truck lawfully parked in the street was an intended user as a necessary extension of the municipality's intent that vehicles park there); *Di Domenico v. Village of Romeoville*, 171 Ill. App. 3d 293, 296 (1988) (plaintiff walking on the street to retrieve items from the trunk of his legally parked vehicle was an intended user).

¶ 36 Plaintiff cites a combination of three factors to assert that the City must have intended that the street in question be used by bicyclists. The first factor plaintiff cites is the municipal ordinance prohibiting adults from riding bicycles on the sidewalk. Chicago Municipal Code § 9-52-020(b) (amended Apr. 10, 2019). The court in *Latimer* established that such a prohibition, alone, does not render a bicyclist an intended user of a roadway, stating: "You are prohibited from riding on the sidewalk, and further, you are permitted to ride where we have not prohibited riding." *Latimer*, 323 Ill. App. 3d at 471. That is to say, the ordinance prohibiting

riding bicycles on the sidewalks merely narrows the areas in which bicyclists are permitted to ride without conveying intent that they ride in any particular other area.

¶ 37    The second factor cited by plaintiff is a response from the City to a special interrogatory submitted by plaintiff in discovery related to the motion to dismiss that is at bar in this case. The interrogatory asked: "[i]s it the expectation of the City of Chicago that persons using bicycles in the City of Chicago will walk their bicycles when not in a designated bicycle lane?" to which the City objected but answered without waiving objection: "it is not the City's expectation that persons using bicycles will walk their bicycles at all points when not in a designated bicycle lane." Plaintiff asserts that this admission conveys intent on the part of the City that bicycles be ridden in the street, since riding on the sidewalk is illegal and Divvy customers (renters) are not expected to push their bicycles. The City argues that its response "merely recognizes that it is foreseeable that bicyclists will not always walk their bicycles when they are outside of bicycle lanes." As "[f]oreseeability alone *** is not the standard for determining whether a duty of care exists here" (*Wojdyla*, 148 Ill. 2d at 428), the City's foresight, alone, is insufficient to establish intent on the part of the City.

¶ 38    The third factor that plaintiff argues conveys intent that the street in question be used for bicycle traffic is the existence of a Divvy bicycle rental station, from which the City derives revenue, close to the site of the accident. The relevance of bicycle rental stations to the question of intended use of nearby streets is a question of first impression. If we look to the "property itself," as directed by *Wojdyla*, we must necessarily look near to the street as well as to the street itself; otherwise, street signs immediately adjacent to the street would not be relevant indicators. *Wojdyla*, 148 Ill. 2d at 425-426. If, then, proximate signage can be a feature of a roadway relevant to the question of the City's intent, then so, too, can any other factor be a

15

proximate manifestation of intent. *Boub*, 183 Ill. 2d at 530 ("bicyclists are permitted, but not intended, users of the roads, in the absence of specific markings, signage, or further manifestation of the local entity's intent that would speak otherwise"). Neither party makes any mention of signage associated with the Divvy station, so the Divvy stations represent an indication of the intended use of the bicycles rented there, as do the streets nearby, and its location implies that bicycles will use the streets and sidewalks adjacent to the Divvy station.

¶ 39        None of these three factors alone would be sufficient to establish plaintiff as an intended user of the roadway on which his accident occurred. However, the combination of the three, plus the street itself, is sufficient to establish intent and thereby establishes a duty on the part of the City. All of the factors, together with the factor that the site of the accident is in an area where Divvy renters go to and from the Divvy station, show an implied intent by the city that the plaintiff was a permitted and intended user of the roadway on which he was traveling. Bicycle renters ride the bicycles they rent to the intended bicycle lane, and the City is well aware of this factor. In the case at bar, the City has approved and generates revenue from a series of bicycle rental stations throughout the city, including one within about 100 feet of where plaintiff's accident took place. As such, in this case, unlike prior precedents, the City certainly intends that bicycles be ridden on the roadway in close proximity to the area of the Divvy stations. It is apparent, in comparing the location of the accident to the map provided in the record, that there is a bicycle lane very close to the rental station cited by plaintiff, from which one must reasonably infer that the streets in close proximity to the Divvy station are intended paths for bicycle use. However the City admits in its brief, and it is apparent in the map provided by the City in the record, that "Divvy stations are located throughout the city, and sometimes not near a designated bicycle route." It defies common sense to suggest that the

City, when it approved rental stations at a distance from bicycle lanes, intended bicycles to be pushed a great distance before being ridden, the user's rental period ticking down all the while. It would be reasonable to conclude that the City intended that bicycles be ridden in the streets adjacent and in close proximity to the stations. The city expressed no intent prohibiting the riding of bicycles in the streets near Divvy stations. It is obviously the City's intent, from all of the factors, that bicycles be ridden in the street at or near the Divvy stations until the rider reaches a designated bicycle path.

¶ 40    The City cites *Olena v. City of Chicago*, 2022 IL App (1st) 210342-U, for persuasive precedent, as it is a very recent case decided by this court involving an accident in which our court upheld the trial court's grant of the City's motion to dismiss. While *Olena* stands only as persuasive precedent, as it is an unpublished order entered under Illinois Supreme Court Rule 23, it is worthwhile to articulate the ways in which it differs from the case at bar. The facts of *Olena* show that the plaintiff was a bicyclist who was injured as the result of alleged negligence on the part of the City in failing to maintain a municipal roadway in a safe condition and in that plaintiff was not riding on a street specifically designated for bicycle use. *Olena*, 2022 IL App (1st) 210342-U ¶¶ 4, 12. The key difference between these two cases is that, in the case at hand, plaintiff presented evidence of the City's intent derived from the specific relationship between where his accident occurred and the nearby Divvy station, whereas in *Olena* the plaintiff presented evidence only of general statements made by city officials about encouraging bicycling, which she claimed demonstrated intent for bicyclists to use all city streets. We agree with the findings in *Olena* but carve out a narrow exception to areas on streets where bicyclists go to and from Divvy stations; these areas are intended for bicycle traffic.

¶ 41     Much as stepping into the street to move to and from one's vehicle was a necessary intended use attendant to the marked intended use of parking vehicles in *Curatola*, riding a bicycle in the area used to get to and from a Divvy station is necessary to its intended use, so that area is intended to be used by all bicyclists. See *Curatola*, 154 Ill. 2d at 216; see also *Sisk*, 167 Ill. 2d at 351 ("The signs, meters and pavement markings which designate parking spaces are clear manifestations of intent that people park their vehicles as well as enter and exit their vehicles in such areas."). When the City approved the locations of Divvy stations far from bicycle lanes, it was aware that necessity would dictate such use, and it had knowledge that bicyclists would be riding their bicycles in the areas close to the station. Absent any signage directly indicating another intended use of bicycles rented from city-approved rental stations and for so long as an ordinance exists prohibiting adult use of bicycles on sidewalks, it is reasonable to conclude that the City intended the use that common sense, custom, and necessity all indicate: that they be ridden in the streets in close proximity to Divvy stations. It would further defy common sense to suggest that, while the City allows bicycle rentals, it does not intend for those bicycles to be ridden in close proximity to the Divvy stations. Since the City made no explicit pronouncement of intent with regard to Divvy renters in particular, we find no reason to conclude that the City's intent is limited to bicyclists renting from Divvy stations. If the City intended that areas in close proximity to Divvy stations are not areas intended for bicycle use, the city council could have passed an ordinance saying that. Accordingly, we find that plaintiff was a permitted and intended user of the roadway where his accident occurred and the City owed him a duty of reasonable care.

¶ 42                                    CONCLUSION

¶ 43         For the foregoing reasons, we reverse the dismissal of plaintiff's complaint and remand to

the trial court for further proceedings.

¶ 44         Reversed and remanded.

---

**No. 1-21-0812**

---

| | |
|---|---|
| **Cite as:** | *Alave v. City of Chicago*, 2022 IL App (1st) 210812 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-L-010879; the Hon. Gerald Cleary, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Erron H. Fisher, of Fisher Law Group, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Julian N. Henriques Jr., Assistant Corporation Counsel, of counsel), for appellee. |